**United States District Court**
For the Northern District of California

1
2
3
4
5                    UNITED STATES DISTRICT COURT
6                    NORTHERN DISTRICT OF CALIFORNIA
7
8   PETER TURNER                           No. C-11-1427 EMC
9           Plaintiff,
                                           **ORDER GRANTING IN PART AND
10      v.                                 DENYING IN PART DEFENDANTS'
                                           MOTION TO DISMISS**
11  CITY AND COUNTY OF SAN
    FRANCISCO, *et al.*,                   **(Docket No. 42)**
12
13          Defendants.
    _____/
14
15                       I.    __INTRODUCTION__
16          On December 22, 2010, Plaintiff Peter Turner filed suit against the City and County of San
17  Francisco ("CCSF"), the San Francisco Department of Public Works ("DPW" or "SFDPW"),
18  Director of Public Works Ed Reiskin, SFDPW Manager Bruce Storrs, DPW Manager Barbara Moy,
19  and DPW Human Resources Representatives Tammy Wong and Doris Urbina, arising from his
20  employment with DPW.  Docket No. 1.  On March 24, 2011, Defendants removed to federal court.
21  The operative Fourth Amended Complaint ("FAC") alleges, *inter alia*, retaliation and deprivation of
22  due process, and raises claims under Cal. Code Civ. P. § 526a; Cal. Labor Code §§ 98.6, 1102.5;
23  Cal. Govt. Code § 12653; Cal. Govt. Code § 8547; and 42 U.S.C. § 1983.  FAC, Docket No. 40.
24  Pending before the Court is Defendants' motion to dismiss Plaintiff's FAC.  Docket No. 42.  Having
25  considered the parties' briefs and oral argument, and for the reasons set forth below, the Court
26  **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss.
27
28

## II.   <u>FACTUAL & PROCEDURAL BACKGROUND</u>

Plaintiff's FAC alleges as follows.  Plaintiff began applying for a position with DPW in 2003.  FAC ¶ 8.  He applied for three positions with the City and County of San Francisco: (1) survey assistant or "5310," (2) survey assistant 2 or "5312"; and (3) survey associate or "5314."  *Id*.  Plaintiff alleges he was qualified for each position but never hired.  He then applied for a survey assistant 2 position with the Millbrae office of SFPUC in 2005, for which he was also qualified but not hired.  FAC ¶ 9.  He again applied for two 5310 positions in 2006 with DPW, for which he was not hired.  FAC ¶¶ 10-11.  Instead, less qualified people favored by Defendant Storrs received the position.  *Id*.

Another 5310 position opened up in early 2007, for which Plaintiff again applied.  FAC ¶ 13.  Plaintiff interviewed for the position, and then took the civil service exams for all three survey positions.  FAC ¶¶ 13-14.  Plaintiff received the highest score on all three exams.  FAC ¶¶ 14, 35-38.  Plaintiff was hired for a survey assistant position.  FAC ¶ 15.

On June 19, 2007, Plaintiff began work as a survey assistant.  FAC ¶ 16.  However, he alleges he was not informed that he had been hired as a *temporary exempt* employee, rather than in a permanent civil service position, until the day he started work.  FAC ¶ 17.  He had interviewed and tested for a permanent position.  FAC ¶ 17.  Five others were also hired as temporary exempts.  FAC ¶ 18.  Plaintiff alleges it was illegal to hire him and others as temporary exempts because Article Ten of the City Charter requires such employees to work on only one capital improvement project; in contrast, Plaintiff worked on numerous tasks throughout the department.  FAC ¶ 19.  He further alleges that he worked out of class from the first day of his employment and given extra responsibility not commensurate with his low pay and temporary status.  FAC ¶¶ 22-24.  Plaintiff's high level of responsibility did not comport with Defendant Storrs's public acknowledgment of Plaintiff's role, and Mr. Storrs refused to officially promote him.  FAC ¶¶ 24-25.  Mr. Storrs and Mr. Hanley (the Chief Surveyor) also attempted to force Plaintiff to sign off on maps and surveys he had not seen, and Mr. Hanley falsely signed maps based on surveys Plaintiff had done.  FAC ¶ 26.

Plaintiff continued to attempt to obtain a promotion and/or permanent status.  Later in 2007, three survey associate positions opened up, but Plaintiff was told not to apply for them because Mr.

Storrs had already selected people for them. FAC ¶ 21. All three new hires were for permanent positions, although two people were less qualified than Plaintiff and a third tested lower than Plaintiff. *Id.*

DPW's use of temporary exempt employees, and failure to use objective criteria to hire permanent employees, resulted in negligent surveying work. FAC ¶¶ 28-29. Plaintiff alleges that the temporary exempt hiring practices were part of a larger scheme, through which DPW underbid on survey work in order to "corner the market," and made up the money by overcharging the public for "mapping fund fees." FAC ¶¶ 30-32. Mr. Storrs acknowledged that this set-up "made the department money." FAC ¶ 32. Plaintiff alleges it was illegal to use mapping fund fees to offset the cost of low survey bids. FAC ¶ 31.

Plaintiff "began speaking out against" Defendants' practices, including " at staff meetings; at union meetings; and in face-to-face meetings with Mr. Storrs and DPW and Human Resources officials. Plaintiff also repeatedly raised the fact that he and other temporary exempts were working out of class on a regular basis." FAC ¶ 32. Mr. Storrs and other DPW officials knew of Plaintiff's concerns. FAC ¶ 33. At some point, "Plaintiff was assigned to map checking, a position Storrs openly acknowledged he used to punish individuals who did not 'follow instructions.'" FAC ¶ 40.

Plaintiff alleges further that in 2009, the Human Resources Department sabotaged Plaintiff's efforts to apply for survey work at the airport. FAC ¶ 41. In response, "he wrote to the Human Resources agent handling the position and told her that he planned to expose these policies and report them to whatever authority would hold them responsible." FAC ¶ 42. In the aftermath of this letter, Plaintiff was summoned to a meeting with Defendants Wong, Moy, and Storrs, in which he was "asked hostile and intimidating questions by Storrs." FAC ¶ 43. Plaintiff again voiced his concerns about Defendants' unlawful practices in the meeting. FAC ¶ 44. Immediately thereafter, Mr. Storrs informed Plaintiff he would be fired. FAC ¶ 45. DPW Director Reiskin sent Plaintiff a letter the next day confirming his termination. *Id.* After he was fired, DPW refused to provide Plaintiff with information about continuing health insurance and available coverage. FAC ¶ 46.

After his termination, Plaintiff continued to seek opportunities to apply for posted survey positions with the City, but Storrs was permitted to select his choices "without regard to objective

3

United States District Court

For the Northern District of California

1  standards." FAC ¶¶ 47-50.  Defendant Urbina "ignored" his application, and informed him that his

2  application had been rejected.  FAC ¶ 49.

3       Plaintiff further alleges that as of June 2010, the five temporary exempts working for DPW

4  were rendered permanent employees when their employment continued after their exempt tenure

5  expired.  FAC ¶ 51.  Plaintiff alleges this practice violated Rule 18 of Article 10 of the City Charter.

6  *Id*.[1]  They were hired as temporary exempts "to allow for vetting and subjective selection of

7  employees in violation of the City Charter."  *Id.*

8       Plaintiff filed a timely charge of discrimination with the Department of Fair Housing and

9  Employment ("DFEH"), and received a right to sue letter on February 22, 2011.  FAC ¶ 53.

10      On March 24, 2011, Plaintiff filed suit in the instant case.  Docket No. 1.  His FAC raises

11  claims for illegal and wasteful expenditure of funds in violation of California Code of Civil

12  Procedure § 526a, retaliation under §§ 98.6 and 1102.5 of the California Labor Code, retaliation

13  under the California False Claims Act, California Government Code § 12653, retaliation under

14  California Government Code § 8547, denial of due process in violation of the Fifth and Fourteenth

15  Amendments to the United States Constitution, and retaliation in violation of the First Amendment.

16  Plaintiff seeks, *inter alia*, damages, back pay, reinstatement, statutory penalties, and injunctive and

17  declaratory relief.

18      Although the operative complaint is Plaintiff's Fourth Amended Complaint, this is

19  Defendants' first motion to dismiss to be heard by the Court.  Defendants seek dismissal of all

20  claims.

21                    **III.    DISCUSSION**

22  A.    Legal Standard

23      Under Rule 12(b)(6), a party may move to dismiss based on the failure to state a claim upon

24  which relief may be granted. Fed. R. Civ. P. 12(b)(6).  A motion to dismiss based on Rule 12(b)(6)

25  challenges the legal sufficiency of the claims alleged.  *See Parks Sch. Of Bus. Symington*, 51 F.3d

---

26      [1]  Paragraph 18 of Section 10.104 of the City Charter provides that positions are exempt from
27  civil service if they are "[a]ppointments, which shall not exceed three years and shall not be
   renewable, for special projects and professional services with limited term funding, except that such
28  positions may be filled through regular civil service procedures."  Defendants' Request for Judicial
   Notice, Docket No. 42-1.

**United States District Court**

For the Northern District of California

1480, 1484 (9th Cir. 1995).  In considering such a motion, a court must take all allegations of

material fact as true and construe them in the light most favorable to the nonmoving party, although

"conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6)

dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  While "a complaint need not

contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is

plausible on its face.'" *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp v. Twombly*, 550 U.S.

544, 556 (2007).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for

more than sheer possibility that a defendant acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting

*Twombly*, 550 U.S. at 556).

B.    Cal. Code Civ. P. § 526a

            Defendants first challenge Plaintiff's cause of action under California Code of Civil

Procedure § 526a, which authorizes taxpayer actions "restraining and preventing any illegal

expenditure of, waste of, or injury to, the estate, funds, or other property of a county . . . against any

officer thereof." Cal. Civ. Proc. Code § 526a.  Although the statute is subject to permissive standing

requirements in state court, in federal court a plaintiff must satisfy Article III standing.  *Cantrell v.*

*City of Long Beach*, 241 F.3d 674, 683 (9th Cir. 2001) ("California's lenient taxpayer standing

requirements [under § 526a] do not relieve the birdwatchers of the obligation to establish a direct

injury under the more stringent federal requirements for state and municipal taxpayer standing.").

            In the instant case, Plaintiff lacks standing under Article III to raise a claim under § 526a

because he has failed to allege any taxpayer injury.  "To establish standing in a state or municipal

taxpayer suit under Article III, a plaintiff must allege a direct injury *caused by the expenditure of tax*

*dollars*; the pleadings of a valid taxpayer suit must set forth the relationship between taxpayer, tax

dollars, and the allegedly illegal government activity." *Cantrell*, 241 F.3d at 683 (emphasis added)

(internal citations and quotation marks omitted).  Plaintiff fails to satisfy the standing requirements

imposed by *Cantrell* because he "has failed to allege that the government *spent* specific amounts of

tax dollars on the challenged conduct."  241 F.3d at 683 (emphasis added).

United States District Court
For the Northern District of California

First, to the extent Plaintiff's complaint could be construed to attempt to allege taxpayer injury on the basis of DPW's employment practices, *see* FAC ¶¶ 19-20, 22 (alleging that Defendants underpaid employees and unlawfully treated them as temporary exempts rather than permanent civil service employees), Plaintiff's allegations appear to suggest monetary *savings* to the taxpayer, or at least a net neutral cost, as a result of Defendants' employment practices.  Indeed, he would appear to be challenging a *failure* to expend funds, rather than a misuse of funds.  *Cf. Cammack*, 932 F.2d at 771 (finding standing where "[t]he complaint asserts that [the challenged statute] proclaims a state holiday in violation of the federal and state constitutions, and that state and municipal tax revenues fund the paid holiday for government employees").  *See Barnes-Wallace v. City of San Diego*, 530 F.3d 776, 786 (9th Cir. 2008), *cert. denied*, 130 S. Ct. 2401 (2010) ("[T]his court has held that municipal taxpayers must show an expenditure of public funds to have standing. [Citations].  The plaintiffs' injury is not actual or imminent because it is unclear whether San Diego loses money by charging nominal rent but requiring lessees to maintain and improve the leased property.") (citing *Cammack v. Waihee*, 932 F.2d 765, 770 (9th Cir. 1991); *Doe v. Madison Sch. Dist. No. 321*, 177 F.3d 789, 794 (9th Cir. 1999) (en banc) (rejecting allegations "that defendants spent tax dollars on renting a hall, printing graduation programs, buying decorations, and hiring security guards" because "those are ordinary costs of graduation that the school would pay whether or not the ceremony included a prayer"). In addition, Plaintiff fails to allege that the funds used for paying employees come from tax revenues.

Second, to the extent  Plaintiff's complaint could be construed to attempt to allege taxpayer injury on the basis of Defendants' alleged mapping fund fee scheme, *see* FAC ¶¶ 31-32 (alleging that Defendants underbid for survey work and then make up the difference by overcharging "the public" for "mapping fund" fees), Plaintiff does not directly challenge the disbursement of public taxpayer funds.  Instead, Plaintiff appears to challenge a method of raising revenue, rather than an expenditure thereof.  Moreover, it is not clear from the FAC whether its reference to "the public" alleges that Defendants charged the government for mapping fund fees, or whether such fees were paid by private citizens; nor is it clear whether the scheme derives from or results in an expenditure of taxpayer funds separate from expenditures accounted for by other, legitimate activity.  *Cf.*

1  *PLANS, Inc. v. Sacramento City Unified Sch. Dist.*, 319 F.3d 504, 508 (9th Cir. 2003) ("Because

2  PLANS challenges the Waldorf school curriculum as a whole, and because it has shown that a

3  measurable amount of public funds support the Waldorf schools, PLANS has taxpayer standing to

4  pursue this suit.").

5      Plaintiff appears to argue in opposition that he has been injured by Defendants' use of

6  taxpayer dollars "on their illegal scheme of underbidding on agency work" because he has been

7  "underpaid and denied the protections that should have been afforded him as a permanent

8  employee."  Opp. at 7.  However, such an injury is not a taxpayer injury; it is an injury in Plaintiff's

9  capacity as an employee.

10     Plaintiff also argues that even if he has not demonstrated standing, the Court retains

11  supplemental jurisdiction over his § 526a claim on the basis of his other viable claims.  However,

12  whatever the scope of this Court's subject matter jurisdiction, Article III standing must be

13  established for each claim, including those over which there is supplemental jurisdiction.  *See*

14  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ("[A] plaintiff must demonstrate standing

15  for each claim he seeks to press.").  *See generally Hangarter v. Provident Life & Acc. Ins. Co.*, 373

16  F.3d 998, 1022 (9th Cir. 2004) ("'[A] plaintiff whose cause of action . . . is perfectly viable in state

17  court under state law may nonetheless be foreclosed from litigating the same cause of action in

18  federal court, if he cannot demonstrate the requisite injury' to establish Article III standing.")

19  (quoting *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1001-02 (9th Cir. 2001)).

20     Accordingly, Plaintiff lacks standing to pursue his § 526a claim in federal court.

21  Defendants' motion to dismiss is **GRANTED** as to this claim, with leave to amend.

22  C.     Cal. Labor Code §§ 1102.5 and 98.6

23     Defendants next challenge Plaintiff's causes of action for retaliation in violation of

24  California Labor Code §§ 1102.5 and 98.6.  Section 1102.5 provides, in relevant part:

25          (a) An employer may not make, adopt, or enforce any rule,
    regulation, or policy preventing an employee from disclosing
26          information to a government or law enforcement agency, where the
    employee has reasonable cause to believe that the information
27          discloses a violation of state or federal statute, or a violation or
    noncompliance with a state or federal rule or regulation.

28

(b) An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.

(c) An employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.

(d) An employer may not retaliate against an employee for having exercised his or her rights under subdivision (a), (b), or (c) in any former employment.

(e) A report made by an employee of a government agency to his or her employer is a disclosure of information to a government or law enforcement agency pursuant to subdivisions (a) and (b).

Cal. Labor Code §§ 1102.5(a)-(e).  Section 98.6 provides, in relevant part,

No person shall discharge an employee or in any manner discriminate against any employee . . . because the employee . . . engaged in any conduct delineated in this chapter, including the conduct described in Chapter 5 (commencing with Section 1101) of Part 3 of Division 2,[2] or because the employee . . . has filed a bona fide complaint or claim or instituted or caused to be instituted any proceeding under or relating to his or her rights, which are under the jurisdiction of the Labor Commissioner, or has testified or is about to testify in any such proceeding or because of the exercise by the employee . . . of any rights afforded him or her.

Cal. Labor Code § 98.6(a).  In other words, "[u]nder § 98.6, employers may not discharge or discriminate against an employee for political activities; for whistleblowing; for assigning wage claims to the Labor Commissioner resulting from demotion, suspension, or discharge for lawful conduct occurring during nonworking hours away from employer's premises; for filing a complaint with the Labor Commissioner or testifying in such proceedings; for initiating proceedings against the employer to collect civil penalties under the 'Labor Code Private Attorneys General Act;' and for exercising 'any rights afforded him or her.'"  *Hollie v. Concentra Health Services, Inc.*, C 10-5197 PJH, 2012 WL 993522, at *6 (N.D. Cal. Mar. 23, 2012) (citing Lab. Code § 98.6(a); Ming W. Chin, *et al.*, *California Practice Guide: Employment Litigation* (2011) §§ 7:1476, *et seq.*).

---

[2] Chapter 5 prohibits employers from, *inter alia*, forbidding or controlling employees' political activities (§§ 1101, 1102), and preventing employees from reporting unlawful conduct to the government or retaliating against them for doing so (§ 1102.5).

1    To establish a prima facie case of retaliation under § 1102.5[], a plaintiff must show: (1) he

2  engaged in protected activity; (2) his employer thereafter subjected him to an adverse employment

3  action; and (3) a causal link between the two." *Jadwin v. County of Kern*, 610 F. Supp. 2d 1129,

4  1152 (E.D. Cal. 2009) (citing *Mokler v. County of Orange*, 157 Cal. App. 4th 121, 138 (2007);

5  *Patten v. Grant Joint Union High Sch. Dist.*, 134 Cal.App.4th 1378, 1384 (2005)).  As *Jadwin*

6  explained,

> An employee engages in protected activity under § 1102.5(b) when he
> "discloses to a governmental agency reasonably based suspicions of
> illegal activity." *Mokler*, 157 Cal. App. 4th at 138 . . . (emphasis
> added) (internal quotation marks omitted). The employee must
> "reasonably believe [ ]he was disclosing a violation of state or federal
> law." [*Patten v. Grant Joint Union High Sch. Dist.*, 134 Cal. App. 4th
> 1378, 1386 (2005)]. To have a reasonably based suspicion of illegal
> activity, the employee must be able to point to some legal foundation
> for his suspicion—some statute, rule or regulation which may have
> been violated by the conduct he disclosed. *Love v. Motion Indus., Inc.*,
> 309 F. Supp. 2d 1128, 1135 (N. D. Cal. 2004) (concluding that without
> citing to "any statute, rule or regulation that may have been violated
> by the disclosed conduct," plaintiff lacked "any foundation for the
> reasonableness of his belief").

15  *Jadwin*, 610 F. Supp. 2d at 1154.

16    Defendants argue that Plaintiff's claims are barred under both statutory provisions because

17  he has failed to exhaust his administrative remedies and because he has failed to state a claim.

18    1.    Exhaustion

19       a.    Section 98.7

20    Plaintiff alleges in his FAC that he exhausted his administrative remedies by filing a charge

21  with the DFEH and receiving a right to sue letter.  FAC ¶ 53.  However, Defendants argue Plaintiff

22  was required to further exhaust his remedies as to any Labor Code claims by filing a charge with the

23  Labor Commissioner under California Labor Code § 98.7.  California Labor Code § 98.7(a)

24  provides, in relevant part, that "[a]ny person who believes that he or she has been discharged or

25  otherwise discriminated against in violation of any law under the jurisdiction of the Labor

26  Commissioner may file a complaint with the division within six months after the occurrence of the

27  violation."  The statute further provides that "[t]he rights and remedies provided by this section do

28  not preclude an employee from pursuing any other rights and remedies under any other law."  §

1   98.7(f).

2        There is a dispute among courts as to whether exhaustion under § 98.7 is required before a

3   plaintiff may bring a cause of action under the Labor Code.  Defendant cites to *Campbell v. Regents*

4   *of Univ. of California*, 35 Cal.4th 311, 333–34 (2005), in support of its argument that exhaustion is

5   required in this case.  *Campbell* recites the general rule under California law that "where an

6   administrative remedy is provided by statute, relief must be sought from the administrative body and

7   this remedy exhausted before the courts will act."  *Campbell*, 35 Cal.4th at 321.  Such a rule applies

8   even when the substantive statute under which one sues (in *Campbell*, Labor Code § 1102.5) is

9   silent as to whether exhaustion is required.  *See, e.g.*, *id.* at 327 ("[T]he express mention in one

10  statute of a fundamental precondition of filing suit against an administrative agency does not

11  abrogate that requirement in every statute that is silent on the matter.") (internal citations omitted).

12       Although *Campbell* suggests as a general matter that exhaustion should be required before

13  pursuing a Labor Code claim in court, *Campbell* did not explicitly address exhaustion before the

14  Labor Commissioner under § 98.7 or the proper construction of that provision.  Rather, it merely

15  considered exhaustion of *internal* administrative procedures (in that case, the University of

16  California's internal procedures).  In addition, *Campbell* did not hold that the legislature, in creating

17  a right of action, cannot prescribe the proper procedure for filing suit; the legislature is not disabled

18  from *e.g.,* specifying that exhaustion of a particular administrative remedy is not required before

19  bringing a lawsuit.  *Campbell* simply states a general principle of California jurisprudence which

20  applies absent legislative directive to the contrary.  *Campbell* did not construe Cal. Lab. Code §

21  98.7.  *Id.* at 321.

22       Courts have differed in how they apply *Campbell* to Labor Code § 98.7.  For example, the

23  bulk of federal district courts hold that exhaustion before the Labor Commissioner is required in

24  order to pursue statutory claims under the Labor Code, regardless of whether a plaintiff has pursued

25  other alternative administrative remedies.  *See, e.g.*, *Ferretti v. Pfizer Inc.*, 11-CV-04486 LHK, 2012

26  WL 694513, at *5 (N.D. Cal. Feb. 29, 2012) ("[S]ince *Campbell* was decided in 2005, courts in this

27  district have uniformly held that claims under section 1102.5 must first be presented to the Labor

28  Commissioner [under § 98.7] before a court can consider them.") (internal citations and quotation

United States District Court

For the Northern District of California

marks omitted) (collecting cases).  However, some courts have held that some form of exhaustion is required, but do not resolve the question of whether exhaustion under § 98.7 is necessary apart from (and in addition to) any other administrative avenues.  *See, e.g.*, *Dolis v. Bleum USA, Inc.*, No. C11–2713 TEH, 2011 WL 4501979, at *2 & n.2 (N.D. Cal. Sept. 28, 2011) (dismissing Section 1102.5 claim because the plaintiff "had at least one administrative remedy available [under § 98.7], and he failed to exhaust it," but declining to reach the question of whether one could exhaust through other administrative routes besides § 98.7).  Still others have expressly found that exhaustion under § 98.7 is unnecessary if the plaintiff has pursued alternative administrative remedies, such as a DFEH claim (as Plaintiff did in this case).  *See, e.g.*, *Steffens v. Regus Group, PLC*, No. 08-cv-21494 LAB (BLM), 2009 WL 1139543, at *2-6 (S.D. Cal. Apr. 28, 2009) (rejecting argument that § 98.7 exhaustion is required and finding that DFEH complaint is sufficient).

Finally, some courts continue to apply pre-*Campbell* decisions holding that § 98.7 exhaustion is not mandatory.  *See, e.g.*, *Lloyd v. County of Los Angeles*, 172 Cal. App. 4th 320, 331-32 (2009) (citing *Daly v. Exxon Corp.*, 55 Cal. App. 4th 39, 46 (1997) ("There is no requirement that Daly exhaust her administrative remedies with the Labor Commissioner.") (citations omitted); *Murray v. Oceanside Unified Sch. Dist.*, 79 Cal. App. 4th 1338, 1359 (2000) (finding exhaustion under § 98.7 not required because the statute used permissive, rather than mandatory, language regarding the administrative remedy, and because the substantive statutory provisions were silent as to administrative remedies)); *see also Hentzel v. Singer Co.*, 138 Cal. App. 3d 290, 303-304 (1982) (finding no exhaustion required based largely on the statute's silence as to an exhaustion requirement).

While a number of federal district courts have extended *Campbell* to require exhaustion under § 98.7, this Court is unaware of any California state court decision that has so held.  In holding that there is no requirement that parties exhaust their claims before the Labor Commissioner under § 98.7, one federal court observed, "No California decision requires as a prerequisite to suit for statutory violation of the Labor Code exhaustion of administrative remedies before the Labor Commissioner."  *See Creighton v. City of Livingston* ("*Creighton II*"), CV-F-08-1507 OWW/SMS, 2009 WL 3246825, at *12 (E.D. Cal. Oct. 7, 2009).  As discussed above, such an interpretation of §

United States District Court

For the Northern District of California

98.7 is consistent with pre-*Campbell* state court decisions.  In addition, as *Creighton* noted, *after Campbell*, there is at least one published and one unpublished state court case supporting this view that exhaustion before the Labor Commissioner is not required.  In *Lloyd v. County of Los Angeles*, 172 Cal. App. 4th 320, 331-32 (2009), the Court of Appeal found no reason "to impose an administrative exhaustion requirement on plaintiffs seeking to sue for Labor Code violations" based in part on the Private Attorneys General Act, which "was adopted to augment the enforcement abilities of the Labor Commissioner with a private attorney general system for labor law enforcement."  In an unpublished opinion, the Court of Appeal in *Cates v. Div. of Gambling & Control*, D046874, 2007 WL 702229 (Cal. Ct. App. Mar. 8, 2007) (unpublished)[3] distinguished *Campbell* because it addressed internal administrative remedies rather than § 98.7 exhaustion, and continued to apply pre-*Campbell* decisions.

The Court finds that exhaustion under § 98.7 is not required before bringing a civil action under §§ 98.6 and 1102.5.  In so holding, the Court finds *Creighton* persuasive and adopts its reasoning.  Particularly, the Court agrees that the Private Attorneys General Act ("PAG Act" or "PAGA"), which covers the statutory claims at issue here, *see* Cal. Labor Code § 2699.5, indicates a legislative emphasis on private enforcement of the Labor Code that would be undercut by a mandatory exhaustion requirement before the Labor Commissioner.  The PAG Act "'empowers or deputizes an aggrieved employee to sue for civil penalties . . . as an alternative to enforcement by the State.'"  *McKenzie v. Fed. Exp. Corp.*, 765 F. Supp. 2d 1222, 1231 (C.D. Cal. 2011) (quoting *Villacres v. ABM Indus., Inc.*, 189 Cal. App. 4th 562, 592 (2010) (internal quotation, citation, and alterations omitted)).  The Act allows private citizens to sue on behalf of themselves "and other current or former employees" for violations of the Labor Code, and permits said citizens to recover civil penalties otherwise recoverable only by the government.  *See* § 2699(a).  The citizen need only give notice to the government and follow certain procedures in § 2699.3 before initiating such an action.  Thus, "[w]hen a employee sues under PAGA, he acts 'as the proxy or agent of the state's labor law enforcement agencies' to 'supplement enforcement actions by public agencies, which lack

---

[3]  The Court may cite unpublished California appellate decisions as persuasive authority. *See Employers Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n. 8 (9th Cir.2003).

United States District Court

For the Northern District of California

1  adequate resources to bring all such actions themselves.'"  *Quevedo v. Macy's, Inc*., 798 F. Supp. 2d

2  1122, 1140 (C.D. Cal. 2011) (quoting *Arias v. Superior Court*, 46 Cal.4th 969, 986 (2009)).

3  Given this statutory backdrop, the *Creighto*n court reasoned,

4          [C]onstruing Labor Code section 98.7 to obligate a plaintiff to seek
         relief from the Labor Commissioner prior to filing suit for Labor Code
5          violations flies in the face of the concerns underlying the Labor Code
         Private Attorneys General Act of 2004 (PAG Act) (Lab. Code, § 2698
6          *et seq*.).  As we stated in *Dunlop v. Superior Court*[, 142 Cal. App. 4th
         330, 337 (2006)], the PAG Act was adopted to augment the
7          enforcement abilities of the Labor Commissioner with a private
         attorney general system for labor law enforcement.  "The Legislature
8          declared its intent as follows:  '(c) Staffing levels for state labor law
         enforcement agencies have, in general, declined over the last decade
9          and are likely to fail to keep up with the growth of the labor market in
         the future.  [¶] (d) It is therefore in the public interest to provide that
10         civil penalties for violations of the Labor Code may also be assessed
         and collected by aggrieved employees acting as private attorneys
11         general, while also ensuring that state labor law enforcement agencies'
         enforcement actions have primacy over any private enforcement
12         efforts undertaken pursuant to this act.'" . . . The PAG Act's approach,
         enlisting aggrieved employees to augment the Labor Commissioner's
13         enforcement of state labor laws, undermines the notion that Labor
         Code section 98.7 compels exhaustion of administrative remedies with
14         the Labor Commissioner.

15  *Creighton*, 2009 WL 3246825 at *11 (quoting *Lloyd*, 172 Cal. App. 4th at 332).[4]

16          In addition, the statutory language of § 98.7 indicates that exhaustion is permissive.

17  Significantly, § 98.7(f) provides:  "the rights and remedies provided under this section do not

18  preclude an employee [from] pursuing any other rights and remedies under any other law."

19  Regardless of the outcome of the administrative proceeding, "the employee is free to pursue his or

20  her claims in court."  *Creighton*, 2009 WL 3246825 at *5.  Section 98.7, which sets forth the

21  procedure for filing and handling of an administrative claim, is the "section" as described in §

22  98.7(f); therefore, the plain language of § 98.7(f) provides that the administrative remedies provided

23

24  _____

25          [4]  The Court also notes that while some courts have criticized *Lloyd* and declined to follow it
    on the grounds that it failed to address *Campbell*, *see Dolis v. Bleum USA, Inc.*, No. C11–2713 TEH,
26  2011 WL 4501979, at *2 (N.D. Cal. Sept. 28, 2011), in fact the government's brief in *Lloyd*
    discussed *Campbell* extensively.  In addition, the Court of Appeal itself cited *Campbell* for the
27  general "rule of exhaustion of administrative remedies" before rejecting the argument that
    exhaustion was required.  *Lloyd*, 172 Cal. App. 4th at 326.  Thus, a more sensible reading of *Lloyd* is
28  simply that the Court of Appeal did not find *Campbell* applicable or controlling on the ultimate
    question.

United States District Court

For the Northern District of California

in § 98.7 are not exclusive and do not preclude remedies provided elsewhere in the Code.  Such

remedies include the rights available under §§ 98.6 and 1102.5.

At oral argument, Defense counsel argued that exhaustion was required because only §§ 98.7

and 2699 supplied the necessary authorizing statutes through which Plaintiff could bring his

statutory claims in court.  However, § 98.6 itself provides authorizing language for suit.  *See* Cal.

Lab. Code § 98.6(b) ("Any employee who is discharged, threatened with discharge, demoted,

suspended, or in any other manner discriminated against in the terms and conditions of his or her

employment because the employee engaged in any conduct delineated in this chapter, . . . shall be

entitled to reinstatement and reimbursement for lost wages and work benefits caused by those acts of

the employer."); *id.* § 98.6(c)(1) ("Any applicant for employment who is refused employment, who

is not selected for a training program leading to employment, or who in any other manner is

discriminated against in the terms and conditions of any offer of employment because the applicant

engaged in any conduct delineated in this chapter, . . . shall be entitled to employment and

reimbursement for lost wages and work benefits caused by the acts of the prospective employer.").

In addition, *Campbell* itself acknowledges a right to seek damages exists under § 1102.5, a statute it

describes as "creat[ing] a right that did not exist at common law."  *Campbell*, 35 Cal. 4th at 328; *see*

Cal. Lab. Code § 1105 ("Nothing in this chapter shall prevent the injured employee from recovering

damages from his employer for injury suffered through a violation of this chapter."); *see also* Cal.

Lab. Code § 1102.6 (allocating burdens of proof in "a civil action or administrative proceeding").

Moreover, the Court notes that the Division of Labor Standards and Enforcement ("DLSE")

itself considers exhaustion under § 98.7 to be optional, not mandatory.  *See Creighton*, 2009 WL

3246825 at *4, *5 ("Plaintiff requests the Court take judicial notice of a letter dated October 12,

2007 from [the] attorney for the California Labor Commissioner, . . . in which it is stated: . . . The

DLSE's position is that the wiser course is not to require exhaustion of Labor Code section 98.7

procedures prior to raising a statutory claim in a civil action."); *see also id.* at *6 (August 12, 2009

letter stating, "[b]ased upon our analysis of the law, the Division's position is that exhaustion of

remedies under Labor Code Section 98.7 is not required prior to filing a civil action in superior

court").  Although, as *Creighton* noted, the DLSE's position is not entitled to substantial *Chevron*

United States District Court

For the Northern District of California

deference, *id.* at *7-8, it is entitled to some consideration.  The Court finds it persuasive, along with the *Creighton* and *Lloyd* courts' reasoning.

In short, the Court agrees that

> where there is no convincing evidence that the state supreme court would decide differently, a federal court must follow the decisions of the state's intermediate appellate courts.  Here, two decisions, albeit one unpublished, have ruled after Campbell, that for statutory labor law claims, exhaustion of administrative remedies before the Labor Commissioner is not required. Counsel for the Labor Commissioner has opined in another matter that exhaustion of administrative remedies before the Labor Commissioner is not a prerequisite to suit for statutory violations of the Labor Code. [¶]  Exhaustion of administrative remedies before the Labor Commissioner before filing suit for statutory violations of the Labor Code is not required under California law.

*Creighton*, 2009 WL 3246825 at *12 (internal citations omitted).  *Campbell* did not overturn earlier California appellate decisions holding § 98.7 does not require exhaustion.

*Campbell* has cautioned that "absent a clear indication of legislative intent, we should refrain from inferring a statutory exemption from our settled rule requiring exhaustion of administrative remedies."  *Campbell*, 35 Cal. 4th at 333.  The permissive language and express reservation of rights within the exhaustion provision itself, as well as the legislature policy underpinning PAGA, convinces the Court that such clear legislative intent is present with respect to § 98.7.

Accordingly, Defendants' motion to dismiss on the basis of failure to exhaust remedies under § 98.7 is **DENIED**.

b.   <u>Section 2699</u>

Defendants argue separately that Plaintiff was required to comply with Cal. Labor Code § 2699.3, which requires plaintiffs to give notice to the Labor and Workforce Development Agency before commencing any civil action seeking civil penalties under the Labor Code.  *See* Cal. Labor Code § 2699.3(a) (requiring plaintiff to "give written notice by certified mail to the Labor and Workforce Development Agency and the employer of the specific provisions of this code alleged to have been violated, including the facts and theories to support the alleged violation" before seeking civil penalties).   Plaintiff does not allege that he complied with this provision, nor does he respond to Defendants' argument in his opposition.  *See* § 2699(a) ("[A]ny provision of this code that

United States District Court

For the Northern District of California

provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency . . . for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees *pursuant to the procedures specified in Section 2699.3*.") (emphasis added). Accordingly, Plaintiff may not seek civil penalties under the Labor Code absent an allegation of compliance with § 2699.3.

    2.    <u>Failure to State a Claim</u>

        In addition to the exhaustion arguments, Defendants also make a blanket argument that Plaintiff has failed to allege plausible claims against the Individual Defendants as to all causes of action, although they make no specific argument related to these particular statutory claims. Plaintiff's FAC makes only conclusory allegations against Individual Defendants Wong and Moy, merely alleging that they attended the meeting at which Storrs questioned him about his email. FAC ¶¶ 42-44. It alleges no conduct or statements by these Defendants, and therefore fails to raise any plausible factual basis for a retaliation claim against them. Similarly, Plaintiff alleges that Defendant Urbina rejected his applications for new jobs after he was terminated, but fails to draw any plausible connection between her rejection of his application and his pre-termination conduct that forms the basis of the alleged retaliation. FAC ¶¶ 48-49. Thus, Plaintiff has not alleged sufficient facts to state any claim against Wong, Moy, or Urbina.[5]

        As against Defendants Reiskin and Storrs, on the other hand, Plaintiff has stated a plausible claim based on their participation in the events directly relating to his termination. Defendant Reiskin, the DPW Director, wrote the letter firing Plaintiff the day after Storrs questioned him about his complaints. FAC ¶ 45. Plaintiff also alleges that "DPW officials" knew of his concerns about illegal practices. FAC ¶ 34. Although the termination letter is the only allegation Plaintiff states directly against Defendant Reiskin, given the temporal proximity between his termination and his complaints, such allegations plausibly suggest his complaints caused the termination. With respect

---

    [5] The Court notes that the Clerk's office terminated Wong, Moy, and Urbina as Defendants on the docket sheet on June 27, 2012, apparently because the FAC did not list them in the caption as Defendants. However, the parties' briefing and arguments at the hearing nonetheless treats each of them as Defendants. Thus, the Court addresses purported claims against them.

**United States District Court**
For the Northern District of California

1    to Defendant Storrs, Plaintiff alleges Storrs questioned him about his complaints in a hostile manner,

2    and immediately thereafter informed him he would be fired.  FAC ¶¶ 43-45.  Plaintiff also alleges

3    Storrs retaliated against him prior to his termination by assigning him map checking as punishment.

4    FAC ¶ 43.[6]  Although these allegations are thin, they are sufficient to satisfy Rule 8 and provide

5    Defendants Storrs and Reiskin with sufficient notice of the claims against them.

6         With respect to the institutional Defendants, Defendants make no argument as to the viability

7    of Plaintiff's claims beyond the exhaustion requirement.  Thus, the Court does not consider the

8    sufficiency of Plaintiff's claims as against CCSF and DPW, and those claims remain.

9         Accordingly, the Court **DENIES** the motion to dismiss on the grounds of exhaustion,

10   **DENIES** the motion to dismiss for failure to state a claim as against Defendants Storrs and Reiskin,

11   **GRANTS** the motion as to civil penalties under § 2699 with leave to amend, and **GRANTS** the

12   motion to dismiss for failure to state a claim as against Defendants Urbina, Wong, and Moy with

13   leave to amend.

14   D.   California False Claims Act - Cal. Govt. Code §§ 12653(b) and (d)

15        Plaintiff's next cause of action alleges violations of the False Claims Act, California

16   Government Code § 12653,[7] which provides, in relevant part:

17              (b) No employer shall discharge, demote, suspend, threaten,
           harass, deny promotion to, or in any other manner discriminate
18         against, an employee in the terms and conditions of employment
           because of lawful acts done by the employee on behalf of the
19         employee or others in disclosing information to a government or law
           enforcement agency or in furthering a false claims action, including
20         investigation for, initiation of, testimony for, or assistance in, an action
           filed or to be filed under Section 12652.

21

22              (c) An employer who violates subdivision (b) shall be liable
           for all relief necessary to make the employee whole, including
23         reinstatement with the same seniority status that the employee would
           have had but for the discrimination, two times the amount of back pay,
           interest on the back pay, compensation for any special damage

24   _____

25        [6]  Moreover, Plaintiff's opposition indicates that he may be able to amend his complaint to
     include additional allegations against Storrs based on his deposition testimony, at which Plaintiff
26   states Storrs admitted he did not want to hire Plaintiff because of his claims against the City.  Opp. at
     6.

27        [7]  Although Plaintiff lists only subsections (b) and (d)(2) in his FAC, subsection (d)
28   incorporates subsection (c).  In addition, the plain text of the statute requires both (d)(1) and (b)(2)
     in order to recover.

sustained as a result of the discrimination, and, where appropriate, punitive damages. In addition, the defendant shall be required to pay litigation costs and reasonable attorneys' fees. An employee may bring an action in the appropriate superior court of the state for the relief provided in this subdivision.

(d) An employee who is discharged, demoted, suspended, harassed, denied promotion, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of participation in conduct which directly or indirectly resulted in a false claim being submitted to the state or a political subdivision shall be entitled to the remedies under subdivision (c) if, and only if, both of the following occur:

(1) The employee voluntarily disclosed information to a government or law enforcement agency or acted in furtherance of a false claims action, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed.

(2) The employee had been harassed, threatened with termination or demotion, or otherwise coerced by the employer or its management into engaging in the fraudulent activity in the first place.

A plaintiff alleging a False Claims Act retaliation claim must allege three elements: (1) that he or she engaged in activity protected under the statute; (2) that the employer knew the plaintiff engaged in protected activity; and (3) that the employer discriminated against the plaintiff because he or she engaged in protected activity. *Mendiondo v. Centinela Hosp. Medical Center*, 521 F.3d 1097, 1103 (9th Cir. 2008); *Moore v. Cal. Inst. of Tech. Jet Propulsion Lab.*, 275 F.3d 838, 845 (9th Cir. 2002); *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1269 (9th Cir. 1996).

Defendants argue that Plaintiff fails to state a claim because he has failed to satisfy the first element, as he has not identified any false claim. Plaintiff argues in response that he has satisfied the first element because he "engaged in protected activity if he reasonably believed that DPW was possibly committing fraud against the government, and he investigated the possible fraud." Opp. at 10 (citing *Moore*, 275 F.3d at 845; *Hopper*, 91 F.3d at 1269). Under the False Claims Act,

(1) "Claim" means any request or demand, whether under a contract or otherwise, for money, property, or services, and whether or not the state or a political subdivision has title to the money, property, or services that meets either of the following conditions:

(A) Is presented to an officer, employee, or agent of the state or of a political subdivision.

United States District Court

For the Northern District of California

(B) Is made to a contractor, grantee, or other recipient, if the money, property, or service is to be spent or used on a state or any political subdivision program or interest, and if the state or political subdivision meets either of the following conditions:

(i) Provides or has provided any portion of the money, property, or service requested or demanded.

(ii) Reimburses the contractor, grantee, or other recipient for any portion of the money, property, or service that is requested or demanded.

Cal. Govt. Code § 12650(b)(1).

Plaintiff fails to sufficiently describe any instance of alleged fraud that would constitute a false claim within the meaning of the Act.  His complaint is vague as to Defendants' alleged unlawful conduct.  For example, he alleges that DPW underpaid him because he was misclassified as a temporary exempt employee rather than a permanent civil service employee.  Yet Plaintiff does not explain how this misclassification resulted in a false claim for payment by DPW.  *Cf. Mendiondo*, 521 F.3d at 1104 (finding allegations of false claims where "[t]he complaint contains examples of practices at CHMC that Mendiondo and her co-plaintiffs suspected to be fraudulent attempts to inflate Medicare reimbursements").

Similarly, to the extent Plaintiff alleges Defendants underbid for certain projects because their costs were lower given their labor practices, Plaintiff does not allege, *e.g.*, that Defendants later inflated their bills or cost public entities unnecessary funds after securing contracts through underbidding.  *Cf., e.g.*, *Kajima Eng'g & Const., Inc. v. City of Los Angeles*, 95 Cal. App. 4th 921, 929-30 (2002) (discussing a false claim cause of action based on "intentionally underbid[ding] the project knowing it could not complete the work within the price submitted and later claim[ing] additional compensation based on false and/or inflated progress payment requests," as well as "falsely certif[ying] minority and women business enterprise (MBE and WBE) participation in the job").  If anything, Plaintiff appears to allege that DPW did not seek or receive enough government money to properly pay its workers, not that DPW somehow submitted false claims for payment.

1      Plaintiff's FAC does allege an "illegal scheme of charging departments under market for

2 surveying work and making up the shortfall with mapping fund fees."  Opp. at 11 (citing FAC ¶¶ 31-

3 32).  However, the FAC alleges that Defendants "overcharg[ed] *the public* for mapping fees."  FAC

4 ¶ 31, *see also* FAC ¶ 3 (describing "mapchecking and/or monument preservation fees charged to the

5 public").  As noted above, though not entirely clear, this suggests that Defendants did not receive

6 mapping fees from a government entity by submitting claims, but rather received said fees from

7 members of the general public.  Plaintiff offers no argument as to how overcharging persons other

8 than government entities could constitute a "false claim."  Plaintiff's counsel offered no satisfactory

9 response at oral argument.  However, counsel suggested Plaintiff may be able to amend to allege

10 false claims against the San Francisco Public Utilities Commission.  Leave to amend will therefore

11 be granted, and the Court offers no analysis of the viability of any such claim at this point.

12 However, Plaintiff is cautioned to adhere to the requirements of Rule 11 in making any amended

13 allegations.

14      Moreover, even assuming such fees are received from other government agencies, Plaintiff's

15 FAC does not plausibly allege (and his opposition does not explain) how Defendants "overcharged"

16 for said mapping fees in a way that was unlawful.  The fact that said fees "ma[de] the department

17 money" does not necessarily mean the charges were wrongfully inflated; it could just as easily mean

18 that the rates for mapping services exceeded the department's costs of providing those services (*e.g.*,

19 the department was maximizing its efficiency).  Absent an allegation that the mapping fees were

20 inflated in an unlawful manner, it is unclear how Plaintiff has alleged a false claim.  In short, the

21 FAC does not sufficiently describe any alleged scheme in such a way as to plausibly allege a false

22 claim.

23      In addition, although Plaintiff listed subsection (d) in his FAC, which describes the

24 conditions under which an employee may recover when he or she has been fired for submitting (or

25 participating in the submission of) a false claim, this provision appears inapplicable to the instant

26 case.  Plaintiff does not allege that he submitted a false claim, or that he was terminated for

27 participation in false claims.  Rather, he alleges he was terminated in retaliation for exposing false

28

United States District Court

For the Northern District of California

1    claims.  Thus, only subsection (b) would appear to be applicable in this case.  In any event, Plaintiff

2    has not plausibly alleged a claim under subsection (d).

3           Moreover, Defendants are correct that Plaintiff may not state a claim against the Individual

4    Defendants under this cause of action.  *LeVine v. Weis*, 90 Cal. App. 4th 201, 212 (2001),

5    *disapproved of on other grounds by Wells v. One2One Learning Found.*, 39 Cal. 4th 1164 (2006)

6    ("By its terms section 12653, subdivision (c), imposes liability only on the employer. . . .  If the

7    Legislature had intended to impose liability on individuals or entities other than the employer, it

8    would have said so.").  Plaintiff concedes this point.  *See* Opp. at 10 n.1.

9           Accordingly, the Court **GRANTS** Defendants' motion to dismiss the individual defendants

10   from this cause of action with prejudice.  If Plaintiff can state a claim, it will only be against

11   Defendants CCSF and DPW.  The Court **GRANTS** Defendants' motion to dismiss Plaintiff's §

12   12653 claim against Defendants CCSF and DPW with leave to amend.

13   E.    42 U.S.C. §1983

14          Plaintiff raises several claims under 42 U.S.C. § 1983, which provides that

15               [e]very person who, under color of any statute, ordinance, regulation,
                 custom, or usage, of any State or Territory or the District of Columbia,
16               subjects, or causes to be subjected, any citizen of the United States or
                 other person within the jurisdiction thereof to the deprivation of any
17               rights, privileges, or immunities secured by the Constitution and laws,
                 shall be liable to the party injured in an action at law, suit in equity, or
18               other proper proceeding for redress.

19   42 U.S.C. § 1983. As reflected by the language above, "[t]o establish a § 1983 claim, a plaintiff must

20   show that an individual acting under the color of state law deprived him of a right, privilege, or

21   immunity protected by the United States Constitution or federal law."  *See Levine v. City of*

22   *Alameda*, 525 F.3d 903, 905 (9th Cir. 2008).

23          1.    Due Process Under the Fifth and Fourteenth Amendments

24          Plaintiff's fourth cause of action raises a claim under the Fifth Amendment to the United

25   States Constitution.  FAC ¶¶ 67-72.  Defendants argue that Plaintiff cannot state a claim under the

26   Fifth Amendment because Defendants are not federal government actors.  *See Bingue v. Prunchak*,

27   512 F.3d 1169, 1174 (9th Cir. 2008) ("[T]he Fifth Amendment's due process clause only applies to

28   the federal government.").  Plaintiff concedes this point, Opp. at 11, but seeks to amend the

21

1   complaint to allege a claim against the Fourteenth Amendment instead.  Indeed, Plaintiff's seventh

2   cause of action already raises a claim under § 1983 for deprivation of property without due process

3   of law in violation of the Fourteenth Amendment.

4          With respect to the Fourteenth Amendment, Plaintiff alleges Defendants deprived him "of

5   the notice and procedures established by the City for permanent employees."  FAC ¶ 80.  The due

6   process clause provides that no state "shall . . . deprive any person of life, liberty, or property,

7   without due process of law."  U.S. Const. Am. XIV.  However, "[a] threshold requirement to a

8   substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest

9   protected by the Constitution."  *Engquist v. Oregon Dept. of Agric.*, 478 F.3d 985, 996 (9th Cir.

10  2007), *aff'd sub nom. Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591 (2008) (internal citations and

11  quotation marks omitted).  Defendants argue that Plaintiff has alleged neither a property interest nor

12  a liberty interest.

13                 a.   Property Interest

14         "[P]roperty interests are not created by the Constitution, but rather by 'existing rules or

15  understandings that stem from an independent source such as state law.'"  *Nunez v. City of Los*

16  *Angeles*, 147 F.3d 867, 872 (9th Cir. 1998).  For example, "[i]n California, the terms and conditions

17  of public employment are generally fixed by statute, rules or regulations creating it, not by contract

18  (even if one is involved)."  *Id.  See also Jenkins v. County of Riverside*, 138 Cal. App. 4th 593, 622

19  (2006) ("[T]he constitutional power to provide for the number, compensation, tenure and

20  appointment of county employees belongs solely to the Board of Supervisors.") (citing Cal. Const.,

21  art. XI, § 1(b); *Hicks v. Board of Supervisors*, 69 Cal.App.3d 228 (1997)).

22         Here, Plaintiff's purported property interest is based on the City's policies with respect to

23  permanent civil service employees.  However, in order to claim a property interest in the protection

24  offered to permanent employees, Plaintiff must demonstrate that he has "a legitimate claim of

25  entitlement to it."  *Nunez v. City of Los Angeles*, 147 F.3d 867, 872 (9th Cir. 1998) (internal citations

26  omitted); *see also Braswell v. Shoreline Fire Dept.*, 622 F.3d 1099, 1102 (9th Cir. 2010) (same).

27  "Temporary, non-civil service employees have no property interest in continued employment,

28  according to California law."  *Hyland v. Wonder*, 972 F.2d 1129, 1141 (9th Cir. 1992) (citing

*Williams v. Los Angeles City Dep't of Water & Power*, 181 Cal. Rptr. 868, 871 (Ct. App. 1982)).

Plaintiff admits that he was hired as a temporary employee, FAC ¶ 16, and the San Francisco

Charter provides that such employees are "exempt from competitive civil service selection,

appointment and removal procedures, and the person serving in the position shall serve at the

pleasure of the appointing authority."  San Francisco Charter § 10.104, Request for Judicial Notice,

Docket No. 42-1, Ex. A.

Although Plaintiff alleges he was wrongfully hired as a temporary employee and that he

should have been a permanent employee, such an allegation does not vest him with a property

interest in his employment.  *Kreutzer v. City & County of San Francisco*, 166 Cal. App. 4th 306, 309

(2008) ("[W]e conclude that a government employee hired into a position expressly classified as

exempt from civil service is not entitled to the protections of the civil service system upon the

employee's release from the position, even if a court finds that, based on the duties of the position, it

should not have been classified as exempt.").  As *Kreutzer* noted,

> It has been the law in California, at least since 1938, that a
> fundamental principle of the civil service system is that employees do
> not become entitled to occupy positions in classifications other than
> the ones to which they were appointed merely by virtue of having been
> assigned duties that properly belong to a higher classification, and that
> if the rule were otherwise, "the entire fabric of the civil service system
> would fail."

*Id.* at 314 (quoting *Pinion v. State Personnel* Board, 29 Cal. App. 2d 314, 319 (1938) (where

employees had completed civil service appointment process for one position, but were misclassified

and had been de facto performing the work of a different classification, employees had "no legal

right to contend they should be permitted to assume the classification title to such positions" because

they had not completed the appointment process for said positions).

*Kreutzer* explained that longstanding case law in California precluded an employee from

obtaining a reclassification merely based on the "assumption and performance of the duties of [that]

classification."  *Id.*; *see also id.* at 651 ("[I]t would obviously be destructive of the very principles

upon which the civil service system is founded to promote [an employee] ... without an examination

as to the qualifications of the candidate for the higher position.") (internal citations and quotation

marks omitted).  Therefore, "a non-civil service position cannot be transformed into a civil service

**United States District Court**
For the Northern District of California

1   position merely by assigning out-of-class duties to its occupant." *Id.* at 321 n.5 (citing *Haas v. City*

2   *of Los Angeles*, 21 Cal.2d 393, 394-95 (1942)).

3        Here, as Plaintiff's counsel confirmed at oral argument, Plaintiff's sole claim to permanent

4   employee status is his allegation that he was misclassified because he functionally performed the

5   duties of a permanent employee and because his duties conflicted with those permissible under

6   temporary exempt status. *See, e.g.*, FAC ¶¶ 19-25. Such allegations do not grant him the right to the

7   benefits of permanent employment.

8        A temporary exempt employee may only claim a property interest on par with permanent

9   employee status if he can demonstrate that he was hired in a manner that complied with the civil

10  service requirements for the relevant civil service position, *and* that the City lacked authority under

11  the applicable statute(s) to hire him as a non-civil service employee. For example, in *McGillicuddy*,

12  the San Francisco Charter in place at the time provided for temporary or emergency appointments

13  only for a period "not exceeding sixty days, and only until regular appointments, under the

14  provisions of this Article, can be made." *McGillicuddy v. Civil Serv. Comm'n*, 133 Cal. App. 782,

15  784 (1933). The Court thus concluded that temporary appointments were constrained by operation

16  of the statute, as the Charter itself provided only limited circumstances in which such appointments

17  could be made. Therefore, there was no authority under the Charter to employ the plaintiffs in

18  "temporary" positions for periods of one to four years, and that the court had properly treated them

19  as permanent employees based on the Charter. *See id.* at 787 ("[T]he commission had no power to

20  adopt a rule whereby positions which were neither temporary in fact nor temporary *by the law of*

21  *their creation* could be designated temporary, thereby preventing the eligibles appointed thereto

22  from acquiring permanent tenure after serving through the probationary period.") (emphasis added).

23       Subsequent cases applying *McGillicuddy* confirm that this exception is limited to

24  circumstances in which and employee was mis-labeled a temporary employee based on a faulty and

25  unlawful *appointment process*, not merely that he performed work outside his class. In *Villain*, for

26  example, the court acknowledged that *McGillicuddy* had relied on an old version of the San

27  Francisco Charter that, even by 1941, was "so altered . . . as to make [it] of little value in

28  determining the issues here presented." *Villain v. Civil Serv. Comm'n of San Francisco*, 18 Cal. 2d

851, 859 (1941).  The *Villain* court determined that plaintiffs could not be deemed permanent employees because the Charter authorized temporary employment as defined by the Civil Service Commission, and the Commission had promulgated rules allowing for temporary employees to work for periods of five months, and to be continually re-appointed to such temporary positions after an interim period of one day between appointments.  *Id.* at 854-56.  Since plaintiffs had been properly appointed and re-appointed as temporary employees under these provisions, they had no claim to permanent employment.  *Id.* at 856.  *See also Shepherd v. Jones*, 136 Cal. App. 3d 1049, 1057 (1982) ("Whether appellant can stake a legitimate claim to his post as executive director depends upon the *circumstances and agreements surrounding his appointment*, specifically, paragraph 6 of the personnel policy.") (emphasis added); *Ticknor v. City of Sacramento*, 80 Cal. App. 2d 284, 288, 181 P.2d 893, 895 (1947) ("The case of *McGillicuddy* . . . merely holds that McGillicuddy and others who were regularly appointed by the Civil Service Commission of the City of San Francisco from a civil service eligible list could not be prevented by the commission from acquiring permanent civil service status by erroneously designating their appointments as temporary."); *Matherly v. Allen*, 86 Cal. App. 2d 95, 99 (1948) (distinguishing *McGillicuddy* because "[i]n our case plaintiff had not taken an examination such as the charter required of applicants for appointment to permanent positions; he was not on an eligible list from which such an appointment could be made; the position of temporary substitute firemen which was intended to end with the emergency which called it into existence was temporary in fact, and also temporary in law, inasmuch as the charter and the resolution of the Board of Supervisors, which constituted the only authorization for plaintiff's appointment, created only temporary positions"); *Fewer v. City & County of San Francisco*, 240 F. App'x 185, 186 (9th Cir. 2007) (rejecting temporary employee's claim to civil service protection where promotion process "failed to comply with the civil service rules governing permanent appointments") (unpublished).

   In this case, as in *Villain*, there is no dispute that Defendants were authorized under the Charter to hire Plaintiff as a temporary employee under paragraph 18 of Section 10.104 of the City Charter, which provides that positions are exempt from civil service if they are "[a]ppointments, which shall not exceed three years and shall not be renewable, for special projects and professional

United States District Court

For the Northern District of California

1   services with limited term funding, except that such positions may be filled through regular civil

2   service procedures."  Defendants' Request for Judicial Notice, Docket No. 42-1.  Plaintiff does not

3   allege – and indeed, rejected the possibility of so alleging at oral argument – that his *appointment*

4   process was unlawful *ab initio*.  Indeed, as noted above, the Charter confirms that even employees

5   hired through the standard civil service process, as Plaintiff apparently was here, may still be

6   classified as temporary exempts.  Thus, Plaintiff's only allegation is that he was mis-classified based

7   on the functions of his work assigned after his appointment, not based on the circumstances of the

8   appointment itself.  Such allegations fall squarely within *Kreutzer*'s ambit, and do not vest Plaintiff

9   with property rights in his employment.

10        Plaintiff's proffered authority does not support his argument.  For example, Plaintiff cites to

11   *Jenkins v. County of Riverside*, 398 F.3d 1093 (9th Cir. 2005), which examined applicable Riverside

12   County ordinances to determine that the plaintiff was a "regular" employee, notwithstanding her

13   denomination as a "temporary" employee, and that she therefore had a property interest in continued

14   employment.  *Jenkins* is of limited utility because it relied largely on the law of that case, which had

15   been determined by a previous unpublished, non-citable panel opinion.  *See id.* at 1097 n.1

16   ("Although *Jenkins I* is the law of this case, nothing in this opinion alters its status as an unpublished

17   disposition, not citable under Circuit Rule 36-3.").  The previous panel had determined that the

18   plaintiff would be considered a "regular" employee if she was "qualified" under the statute;

19   therefore, the subsequent panel's only task was to determine whether she was "qualified."  The court

20   determined that she was qualified as defined by the statute, and that therefore she should be treated

21   as a regular employee.[8]  *See id.* at 1097 n.7 ("We note, again, that our reading of California law is

---

[8]  It is also worth noting that a California Court of Appeal later came to a different
conclusion as to the plaintiff's temporary employment status in a collateral case not affected by
estoppel:

> We believe the Ninth Circuit's construction of California law
> is wrong.  The Ninth Circuit's opinion in the federal case was driven
> by its view that plaintiff "was a temporary because the [C]ounty says
> she was."  The source of this problem was *McGillicuddy*, in which the
> city had tried to designate the employees' disputed status as
> "temporary," when no such classification existed in the authorizing
> legislation.  The sole reason to claim that the employees were
> "temporary" was the city's post hoc rationalization: *i.e.*, because the
> city "said so."  The situation here is wholly different.  As we have

United States District Court

For the Northern District of California

1  constrained by the law of the case. We are not today deciding that showing that an employee was

2  'qualified' is enough, standing alone, for that employee to claim de facto 'regular' employment

3  status. Rather, we address that factor alone because it is the one left in dispute after the earlier

4  appeal."). In spite of its limited application, however, *Jenkins* actually supports the proposition that

5  the circumstances of one's appointment, combined with the government's authority under the

6  applicable statutes to make such appointments, determines the scope of any property interest.

7      Accordingly, Defendants' motion to dismiss Plaintiff's due process claim to the extent it is

8  based on a property interest is **GRANTED** with prejudice.

9          b.    Liberty Interest

10     Defendants next argue that Plaintiff cannot state a claim for violation of due process based

11  on a liberty interest. "A person has a liberty interest in employment protected by the Due Process

12  Clause if the dismissal effectively precludes future work in the individual's chosen profession."

13  *Braswell v. Shoreline Fire Dept.*, 622 F.3d 1099, 1102-03 (9th Cir. 2010) (internal citations and

14  quotation marks omitted). "To establish a violation of such a liberty interest, Plaintiff must show

15  that his dismissal 'destroyed [his] freedom to take advantage of other employment opportunities'

16  and that, because of the dismissal, it is 'virtually impossible for [him] to find new employment in his

17  chosen field.'" *Id.* at 1103 (quoting *Engquist v. Or. Dep't of Agric.*, 478 F.3d 985, 998 (9th Cir.

18  2007)). "A person's liberty interest is also implicated if 'the dismissal is for reasons that might

19  seriously damage his standing in the community.'" *Braswell v. Shoreline Fire Dept.*, 622 F.3d 1099,

20  1103 n.1 (9th Cir. 2010) (quoting *Merritt v. Mackey*, 827 F.2d 1368, 1373 (9th Cir.1987)); *see also*

21  *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 573 (1972) ("[W]here a person's good name,

22  reputation, honor, or integrity is at stake because of what the government is doing to him, notice and

23  an opportunity to be heard are essential.") (internal citations and quotation marks omitted).

24  
                    previously indicated, the constitutional power to provide for the
25                  number, compensation, tenure and appointment of county employees
                    belongs solely to the Board of Supervisors. (Cal. Const., art. XI, §
26                  1(b); *see Hicks v. Board of Supervisors*, *supra*, 69 Cal.App.3d 228,
                    138 Cal. Rptr. 101.) Whether an employee can be classified
27                  differentially as a regular or as a permanent employee depends entirely
                    on what the authorizing legislation provides.

28  *Jenkins v. County of Riverside*, 138 Cal. App. 4th 593, 622 (2006).

United States District Court

For the Northern District of California

In the instant case, Plaintiff's FAC does not currently allege any cognizable liberty interest affected by his employment termination because he does not allege an inability to obtain future work in his chosen profession, nor does he allege any public disclosure of stigmatizing reasons for his dismissal.  FAC ¶¶ 45-46 (stating only that he was fired, and offering no allegations of public disclosure of any disciplinary reasons for the termination).[9]  *See Kreutzer*, 166 Cal. App. 4th at 309 ("We . . . hold that where a government employee is released from employment for reasons characterized only as non-disciplinary, and not otherwise publicly disclosed, the employee's liberty interest in reputation has not been infringed, and the employee is entitled to no relief."); *see also id.* at 321 ("[E]ven if the dismissal of an at-will government employee is based on stigmatizing charges, this does not implicate a liberty interest if the reasons are not disclosed to the public.") (citing *Hayes v. Phoenix-Talent School Dist. No. 4*, 893 F.2d 235, 236-237 (9th Cir.1990)).

Accordingly, to the extent Plaintiff bases his due process claim on the deprivation of a liberty interest, Defendants' motion to dismiss this claim is **GRANTED** with leave to amend.

### 2.   First Amendment

Defendants next argue Plaintiff cannot state a claim under § 1983 for violation of the First Amendment.  "To recover under § 1983 for such retaliation, a plaintiff must prove:  (1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action."  *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010).

Defendants raise only two arguments against Plaintiff's First Amendment claim.  First, they argue he has failed to allege *Monell* liability by the City.  Second, they argue he has failed to sufficiently allege any individual Defendant's liability.  Accordingly, the Court addresses only these arguments and not, *e.g.*, whether Plaintiff's complaints against Defendants' practices constituted protected speech.  *See generally Coszalter v. City of Salem*, 320 F.3d 968, 973 (2003) ("An employee's speech is protected under the First Amendment if it addresses a matter of legitimate

---

[9]  Although Plaintiff's opposition cites to deposition testimony outside the pleadings, that testimony, even if included or described in the pleadings, similarly does not indicate public disclosure of reasons for Plaintiff's dismissal.

1    public concern.") (internal citations and quotation marks omitted); *Eng v. Cooley*, 552 F.3d 1062,

2    1070 (9th Cir. 2009) (summarizing elements of retaliation test).

3            a.    *Monell*

4            There is no respondeat superior liability under § 1983.  *See Board of County Comm'rs v.*

5    *Brown*, 520 U.S. 397, 403 (1997); *Monell v. Dep't of Social Servs*., 436 U.S. 658, 691 (1978).

6    However, local governments are "persons" subject to liability under 42 U.S.C. § 1983 where official

7    policy or custom causes a constitutional tort.  *See Monell*, 436 U.S. at 690.  To impose municipal

8    liability under § 1983 for a violation of constitutional rights, a plaintiff must show:  "(1) that the

9    plaintiff possessed a constitutional right of which [he or she] was deprived; (2) that the municipality

10   had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional

11   right; and, (4) that the policy is the moving force behind the constitutional violation."  *See Plumeau*

12   *v. School Dist. # 40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (internal citations and

13   quotation marks omitted).

14           "A section 1983 plaintiff may establish municipal liability in one of three ways": (1) "a city

15   employee committed the alleged constitutional violation pursuant to a formal governmental policy

16   or a longstanding practice or custom which constitutes the standard operating procedure of the local

17   governmental entity"; (2) "the individual who committed the constitutional tort was an official with

18   final policy-making authority"; and (3) "an official with final policy-making authority ratified a

19   subordinate's unconstitutional decision or action and the basis for it."  *Gillette v. Delmore*, 979 F.2d

20   1342, 1346-47 (9th Cir. 1992) (internal citations and quotation marks omitted).  "Whether a

21   particular official has final policy-making authority is a question of state law."  *Id.*

22           In this case, dismissal is clearly warranted insofar as Plaintiff seeks to rely on the first

23   (policy) prong, as his FAC contains no allegations related to *Monell* liability, even on a cursory

24   basis.  Indeed, Plaintiff's only response in opposition is that his allegations satisfy the second prong

25   because Defendants Reiskin and Storrs had final policymaking authority over the practice of using

26   temporary exempt workers to underbid for work and overcharge for mapping fund fees.  Opp. at 14.

27   Thus, the Court considers only that prong.

28           However, even as to the second prong, the complaint itself contains no allegations (even on a

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    conclusory basis) of final policymaking authority.  In addition, Plaintiff's argument in opposition

2    appears misplaced, as he focuses on Defendants Reiskin's and Storrs's authority with respect to the

3    underlying conduct about which he was complaining, DPW's employment practices.  Yet even

4    assuming Defendants had final policymaking authority with respect to those labor practices, that

5    does not establish that they had authority over the potential policies or practices yielding the

6    retaliatory conduct; *e.g.*, Plaintiff's termination.  "Municipal liability attaches only where the

7    decisionmaker possesses final authority to establish municipal policy *with respect to the action*

8    *ordered*.  The fact that a particular official—even a policymaking official—has discretion in the

9    exercise of particular functions does not, without more, give rise to municipal liability based on an

10   exercise of that discretion."  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-82 (1986); *see also*

11   *Molokai Veterans Caring For Veterans v. County of Maui*, CIV. 10-00538 LEK, 2011 WL 1637330,

12   at *26 (D. Haw. Apr. 28, 2011) ("Plaintiffs have not identified either an officially adopted policy or

13   a longstanding practice or custom. As the mayor, Defendant Tavares was arguably a "final

14   policymaker" at the time of the alleged violation. Case law, however, requires that the official be the

15   final policy-making authority with respect to that action. . . . [W]hile it was not unreasonable for

16   Plaintiffs to have believed that Mayor Tavares could have influenced the building permit decision

17   [on which their claim was based], she was not the final decision-making authority on the issuance of

18   building permits.") (citing *Pembaur*, 475 U.S. at 481).

19        Thus, that these Defendants may have had discretion to terminate Plaintiff does not

20   necessarily mean they were "responsible for establishing final government policy respecting such

21   activity" such that "the municipality can be held liable."  *Id*. at 483.  In addition, to the extent

22   Plaintiff seeks to allege other instances of retaliation separate from the termination, there is no

23   indication from the complaint that Plaintiff has alleged final policymaking authority on the part of

24   any official with respect to said conduct.

25        Accordingly, Defendants' motion to dismiss Plaintiff's First Amendment claim as against

26   CCSF/DPW under *Monell* is **GRANTED** with leave to amend.

27                    b.    Individual Defendants

28        Defendants also challenge Plaintiff's First Amendment claim as against the Individual

United States District Court

For the Northern District of California

1   Defendants.  A supervisor may be liable under section 1983 upon a showing of (1) "personal

2   involvement in the constitutional deprivation"; or (2) "a sufficient causal connection between the

3   supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207

4   (9th Cir. 2011) (internal citations omitted).  Beyond his or her own conduct, a supervisor generally

5   "is only liable for constitutional violations of his subordinates if the supervisor participated in or

6   directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*,

7   880 F.2d 1040, 1045 (9th Cir. 1989).

8          In the instant case, Plaintiff has alleged sufficient facts to state a claim as against Defendants

9   Reiskin and Storrs, though it is a close call.  Both Defendants were alleged to be personally involved

10   in his termination.  In addition, as the Court has previously explained, "[i]n the employment

11   discrimination context, courts have noted that one way of establishing a causal link is to show that

12   the adverse action took place 'very close' in time after the plaintiff has engaged in the protected

13   activity."  *Jefferson v. City of Fremont*, C-12-0926 EMC, 2012 WL 1534913 (N.D. Cal. Apr. 30,

14   2012) (quoting *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (temporal proximity

15   can be sufficient to establish causation only when the adverse action takes place "very close" in time

16   to the protected activity) (citations omitted)).  Here, Plaintiff alleges he was fired within one day of

17   the meeting at which Storrs questioned him about his complaints regarding, *inter alia*, Defendants'

18   employment and mapping fund fee practices.  It would be difficult to achieve closer proximity

19   between the two events.  Thus, while his allegations are fairly thin, they are sufficient to allege a

20   claim against Defendants Reiskin and Storrs for his termination.

21          In addition, with respect to Defendant Storrs, Plaintiff has stated a claim against him based

22   on the meeting at which Storrs questioned Plaintiff, as well as Storrs's alleged act of assigning

23   Plaintiff to map checking as punishment.  *See Coszalter v. City of Salem*, 320 F.3d 968, 975 (9th Cir.

24   2003) (because "[v]arious kinds of employment actions may have an impermissible chilling effect,"

25   "even minor acts of retaliation can infringe on an employee's First Amendment rights").

26          However, with respect to the remaining Defendants, as discussed above, Plaintiff has alleged

27   no specific conduct in which they have engaged so as to state a plausible claim against them.  "To

28   survive [a] motion to dismiss [claims against individual defendants under § 1983], he is required to

United States District Court

For the Northern District of California

1   allege overt acts with some degree of particularity such that his claim is set forth clearly enough to

2   give defendants fair notice of the type of claim being pursued." *Ortez v. Washington County, State*

3   *of Or.*, 88 F.3d 804, 810 (9th Cir. 1996) (citing *Jones v. Comm'y Redev. Agency of City of Los*

4   *Angeles*, 733 F.2d 646, 649 (9th Cir. 1984)).  Plaintiff has alleged no such overt acts on the part of

5   Defendants Wong and Moy.  Although he has alleged an overt act on the part of Defendant Urbina

6   (rejecting his applications for new positions), as noted above, he fails to draw with any factual

7   specificity any causal connection between his conduct and her knowledge of, or action upon, said

8   conduct.

9          Accordingly, the Court **DENIES** the motion to dismiss Plaintiff's First Amendment claim as

10  against Defendants Reiskin and Storrs, and **GRANTS** the motion as against Defendants Wong,

11  Moy, and Urbina with leave to amend.

12  F.       California Government Code § 8547

13         Finally, Defendants seek dismissal of this claim on the grounds that Plaintiff is not a state

14  employee.  Plaintiff does not contest Defendants' motion to dismiss this claim.  *See* Opp. at 10 n.1;

15  *see also Schiller v. County of Riverside*, E030129, 2002 WL 1832898, at *5 (Cal. Ct. App. Aug. 12,

16  2002) (unpublished) ("Government Code section 8547.1 specifically refers to 'state employees.'

17  Plaintiff is a county employee.  By its plain language, the statute does not apply to county

18  employees.").  Accordingly, the Court **GRANTS** Defendants' motion to dismiss with prejudice as to

19  the § 8547 claim.

20                              **IV.    CONCLUSION**

21         For the foregoing reasons, the Court hereby **ORDERS** as follows.  Defendants' motion to

22  dismiss is

23  (1)      **GRANTED** without prejudice as to Plaintiff's claims under Plaintiff's claims under Cal.

24           Code Civ. P. § 526a;

25  (2)      **DENIED** as to Defendants' claim that Plaintiff has failed to exhaust administrative remedies

26           under Cal. Labor Code § 98.7, **DENIED** as to Plaintiff's claims against Defendants Storrs

27           and Reiskin under Cal. Labor Code §§ 98.6 and 1102.5, **GRANTED** without prejudice as to

28

1    claims against Defendants Wong, May, and Urbina under §§ 98.6 and 1102.5, and

2    **GRANTED** without prejudice as to civil penalties under § 2699;

3  (3)    **GRANTED** with prejudice as to Plaintiff's claims under Cal. Govt. Code § 12653 against

4    the Individual Defendants, and **GRANTED** without prejudice as to Plaintiff's claims under

5    Cal. Govt. Code § 12653 against CCSF/DPW;

6  (4)    **GRANTED** with prejudice as Plaintiff's claims for violation of due process under § 1983 to

7    the extent it is based on a property interest, **GRANTED** without prejudice as Plaintiff's

8    claims for violation of due process under § 1983 to the extent it is based on a liberty interest,

9    **GRANTED** without prejudice as to Plaintiff's claims for violation of the First Amendment

10    under § 1983 as against CCSF/DPW, **GRANTED** without prejudice as to Plaintiff's claims

11    for violation of the First Amendment under § 1983 as against Defendants Wong, May, and

12    Urbina, and **DENIED** as to Plaintiff's claims for violation of the First Amendment under §

13    1983 as against Defendants Storrs and Reiskin; and

14  (5)    **GRANTED** with prejudice as to Plaintiff's claims under Cal. Govt. Code § 8547.

15    This Order disposes of Docket No. 42.

16

17    IT IS SO ORDERED.

18

19  Dated:  August 29, 2012

20

21                                   EDWARD M. CHEN

22                                   United States District Judge

23

24

25

26

27

28