UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER TURNER<br><br>    Plaintiff,<br><br>    v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, *et al.*,<br><br>    Defendants.<br>_____/ | No. C-11-1427 EMC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION**<br><br>**(Docket No. 56)** |

## I. INTRODUCTION

Pending before the court is Plaintiff's motion for reconsideration of this Court's August 29, 2012 order dismissing with prejudice Plaintiff's claim for violation of his Fourteenth Amendment property interests.[1] Plaintiff did not first seek leave to file the motion for reconsideration, as is required under Local Rule 7-9.

## II. FACTUAL & PROCEDURAL BACKGROUND

Plaintiff brings suit against the City and County of San Francisco (CCSF), the San Francisco Department of Public Works (DPW), and various individuals, alleging various violations of California state law and the Federal Constitution in connection with his employment with DPW. On July 6, 2012 Defendants moved to dismiss his Fourth Amended Complaint (FAC). Docket No. 42.

---

[1] Plaintiff actually titles his motion a Motion for Leave to File Amended Claim Stating Facts to Support Due Process Claim Arising out of Property Interest. In his reply, however, he concedes that his motion is in fact a motion for reconsideration of the August 29, 2012 order dismissing this claim with prejudice, and thus subject to Local Rule 7-9 on motions for reconsideration.

Plaintiff's allegations as of the time of the motion, as recited in the August 29 order on the motion to dismiss, are as follows.

Plaintiff began applying for a position with DPW in 2003. FAC ¶ 8. He applied for three positions with the City and County of San Francisco: (1) survey assistant or "5310," (2) survey assistant 2 or "5312"; and (3) survey associate or "5314." *Id.* Plaintiff alleges he was qualified for each position but never hired. He then applied for a survey assistant 2 position with the Millbrae office of SFPUC in 2005, for which he was also qualified but not hired. FAC ¶ 9. He again applied for two 5310 positions in 2006 with DPW, for which he was not hired. FAC ¶¶ 10-11. Instead, less qualified people favored by Defendant Storrs received the position. *Id.*

Another 5310 position opened up in early 2007, for which Plaintiff again applied. FAC ¶ 13. Plaintiff interviewed for the position, and then took the civil service exams for all three survey positions. FAC ¶¶ 13-14. Plaintiff received the highest score on all three exams. FAC ¶¶ 14, 35-38. Plaintiff was hired for a survey assistant position. FAC ¶ 15.

On June 19, 2007, Plaintiff began work as a survey assistant. FAC ¶ 16. However, he alleges he was not informed that he had been hired as a temporary exempt employee, rather than in a permanent civil service position, until the day he started work. FAC ¶ 17. He had interviewed and tested for a permanent position. FAC ¶ 17. Five others were also hired as temporary exempts. FAC ¶ 18. Plaintiff alleges it was illegal to hire him and others as temporary exempts because Article Ten of the City Charter requires such employees to work on only one capital improvement project; in contrast, Plaintiff worked on numerous tasks throughout the department. FAC ¶ 19. He further alleges that he worked out of class from the first day of his employment and was given extra responsibility not commensurate with his low pay and temporary status. FAC ¶¶ 22-24. Plaintiff's high level of responsibility did not comport with Defendant Storrs's public acknowledgment of Plaintiff's role, and Mr. Storrs refused to officially promote him. FAC ¶¶ 24-25. Mr. Storrs and Mr. Hanley (the Chief Surveyor) also attempted to force Plaintiff to sign off on maps and surveys he had not seen, and Mr. Hanley falsely signed maps based on surveys Plaintiff had done. FAC ¶ 26.

Plaintiff continued to attempt to obtain a promotion and/or permanent status. Later in 2007, three survey associate positions opened up, but Plaintiff was told not to apply for them because Mr.

Storrs had already selected people for them. FAC ¶ 21. All three new hires were for permanent positions, although two people were less qualified than Plaintiff and a third tested lower than Plaintiff. *Id.*

DPW's use of temporary exempt employees, and failure to use objective criteria to hire permanent employees, resulted in negligent surveying work. FAC ¶¶ 28-29. Plaintiff alleges that the temporary exempt hiring practices were part of a larger scheme, through which DPW underbid on survey work in order to "corner the market," and made up the money by overcharging the public for "mapping fund fees." FAC ¶¶ 30-32. Mr. Storrs acknowledged that this set-up "made the department money." FAC ¶ 32. Plaintiff alleges it was illegal to use mapping fund fees to offset the cost of low survey bids. FAC ¶ 31.

Plaintiff "began speaking out against" Defendants' practices, including "at staff meetings; at union meetings; and in face-to-face meetings with Mr. Storrs and DPW and Human Resources officials. Plaintiff also repeatedly raised the fact that he and other temporary exempts were working out of class on a regular basis." FAC ¶ 32. Mr. Storrs and other DPW officials knew of Plaintiff's concerns. FAC ¶ 33. At some point, "Plaintiff was assigned to map checking, a position Storrs openly acknowledged he used to punish individuals who did not 'follow instructions.'" FAC ¶ 40.

Plaintiff alleges further that in 2009, the Human Resources Department sabotaged Plaintiff's efforts to apply for survey work at the airport. FAC ¶ 41. In response, "he wrote to the Human Resources agent handling the position and told her that he planned to expose these policies and report them to whatever authority would hold them responsible." FAC ¶ 42. In the aftermath of this letter, Plaintiff was summoned to a meeting with Defendants Wong, Moy, and Storrs, in which he was "asked hostile and intimidating questions by Storrs." FAC ¶ 43. Plaintiff again voiced his concerns about Defendants' unlawful practices in the meeting. FAC ¶ 44. Immediately thereafter, Mr. Storrs informed Plaintiff he would be fired. FAC ¶ 45. DPW Director Reiskin sent Plaintiff a letter the next day confirming his termination. *Id.* After he was fired, DPW refused to provide Plaintiff with information about continuing health insurance and available coverage. FAC ¶ 46.

After his termination, Plaintiff continued to seek opportunities to apply for posted survey positions with the City, but Storrs was permitted to select his choices "without regard to objective

1 standards." FAC ¶¶ 47-50. Defendant Urbina "ignored" his application, and informed him that his
2 application had been rejected. FAC ¶ 49.

3 Plaintiff further alleges that as of June 2010, the five temporary exempts working for DPW
4 were rendered permanent employees when their employment continued after their exempt tenure
5 expired. FAC ¶ 51. Plaintiff alleges this practice violated Rule 18 of Article 10 of the City Charter.
6 Id. They were hired as temporary exempts "to allow for vetting and subjective selection of
7 employees in violation of the City Charter." *Id.*

8 On August 29, 2012, this Court granted in part and denied in part Defendants' motion to
9 dismiss Plaintiff's Fourth Amended Complaint. Order Granting in Part and Denying in Part
10 Defendants' Motion to Dismiss (Docket No. 49) ("August 29 Order"). In this order, this Court
11 dismissed with prejudice Plaintiff's due process claim under the Fourteenth Amendment to the
12 degree that it was based on a property interest. *Id.* at 22-27. This Court found that Plaintiff was
13 unable to show that he had a property interest in his employment with DPW despite the fact that he
14 was only a temporary employee. *Id.*

### III. DISCUSSION

A. Plaintiff's Failure to Comply with Local Rule 7-9

17 As a preliminary matter, Plaintiff failed to move for leave to file a motion for
18 reconsideration. Plaintiff states that his motion "set forth sufficient argument and authority that
19 would allow for this Court to grant Plaintiff leave to file a motion for reconsideration, as well as
20 sufficient argument and authority for the Court to grant Plaintiff's leave to amend the complaint."
21 Pl.'s Reply at 1. He argues that the fact that he used one motion for both requests "should not
22 obscure the fact that Plaintiff meets the requirements of Local Rule 7-9 and that granting Plaintiff
23 leave to file a motion for reconsideration is appropriate given the circumstances." *Id.*

24 Plaintiff's argument here neglects the plain meaning of Rule 7-9, which provides that "No
25 party may notice a motion for reconsideration *without first obtaining leave of Court* to file the
26 motion." Local Rule 7-9(a). Under the terms of this rule, Plaintiff is required to obtain leave of
27 Court *before* noticing his motion for reconsideration. This he failed to do. Even treating his motion

as a request for leave to file a motion for reconsideration, however, he has failed to demonstrate that he should be entitled to file a motion for reconsideration.

B. <u>Grounds for Leave to File Motion for Reconsideration under Local Rule 7-9</u>

Local Rule 7-9 also sets out substantive requirements for motions for leave to file motions for reconsideration. It provides that before the moving party will be permitted to file a motion for reconsideration, he or she must show one of three things:

> (1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or
>
> (2) The emergence of new material facts or a change of law occurring after the time of such order; or
>
> (3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

Local Rule 7-9(b). In his motion, Plaintiff argues that he has successfully shown both (2) and (3).

1. <u>Emergence of New Material Facts or a Change of Law</u>

Plaintiff argues that new material facts have emerged since the Court's order. Specifically, he cites the October 3, 2012 deposition testimony of Paresh Chhanya, which he alleges shows that Defendants falsified accounts to hide city spending on certain projects, and that this practice resulted in Plaintiff's being hired as a temporary employee when he should have been classified as permanent. Reply at 2.

Plaintiff's argument that this constitutes a new material fact on which to base his motion for leave to file a motion for reconsideration, however, is flawed for two main reasons. First, he offers no explanation why he could not have discovered and presented any information from Mr. Chhanya's deposition in his opposition to Defendant's motion to dismiss. Second, he fails to establish that any information discovered in this deposition is material to the question of whether he has articulated a viable due process claim based on a property interest in his employment.

Plaintiff cites specifically to a part of the deposition where Mr. Chhanya is discussing the

process for filling out timecards that he followed when he was a temporary employee. Reply at 2, Ex. A at 17-22. Mr. Chhanya testified that during his time as a temporary employee, he would initially fill out his time sheets using a project code provided by the supervisor who assigned him to his job for each day. Reply Ex. A at 20. This timesheet would then be reviewed by the accounting department, which would at times change the project code before the final submission of the official timecard. *Id.* at 20-23. Mr. Chhanya testified that for some period of time, Plaintiff himself was involved in the oversight of temporary employee timecards. *Id.* at 16.

      The deposition contains clear indications that Plaintiff was likely aware this timecard system. Mr. Chhanya does not seem to possess any inside knowledge of how decisions are made about project classifications on timecards; he was testifying only to his experience filling out timecards as a temporary employee. Plaintiff was a temporary employee at the same time as Mr. Chhanya and presumably had the same system for filling out time cards. Indeed, Mr. Chhanya even states that Plaintiff himself was involved in overseeing the timecards of temporary workers for some period of time. Plaintiff offers nothing to indicate that the timecard system described by Mr. Chhanya was previously unknown to him. He thus fails to establish that he could not, with reasonable diligence, have discovered and presented this information prior to the August 29 Order.

      Additionally, Plaintiff fails to establish that Mr. Chhanya's deposition provides him with new material facts, or any new facts at all. Plaintiff represents that Mr. Chhanya stated that timesheets were routinely altered because "My basic understanding is that sometimes - - we are enterprise-based, so we generate our own. A lot of times projects will go - - would have budgets and they may increase to - - keep accounting balances. You may be working on a job or even being billed to another job." Reply at 2. In context, it is not entirely clear whether Mr. Chhanya's comments relate to the practice of altering job codes, or to the practice of listing job codes at all. *See* Reply Ex. A at 21-22.

      Regardless, Plaintiff does not allege that Mr. Chhanya's deposition provided him with new information, only with additional confirmation of actions he already believed the DPW was undertaking. For example, he describes the evidence in Mr. Chhanya's deposition as "*confirming* that the City falsified information on timesheets in order to fund projects on which temporary

1 exempt employees worked for which there were no authorized funds available." Reply at 2
2 (emphasis added). Plaintiff notes that "[t]his testimony *affirms* the fact that Defendants were
3 engaged in falsifying accounts and reveals that the motive behind this practice was to hide the fact
4 that the City was spending more on projects than initially authorized." *Id.* (emphasis added).
5 Plaintiff states that Defendants engaged in an illegal scheme that resulted in improperly hiring him
6 as a temporary employee, and notes that he "*realleges this fact with renewed vigor* following the
7 recent discovery of material facts that support a finding that Defendants were involved in the
8 falsifying of reports to perform work and hire employees for which no authorization existed." *Id.* at
9 2-3 (emphasis added).

10 In any case, Plaintiff fails to show how this new information is relevant to the question of
11 whether he had a property interest in his employment. As discussed in the August 29 Order and
12 below, temporary non-civil service employees generally do not have a property interest in their
13 employment. *See* August 29 Order at 22-23 (citing *Hyland v. Wonder*, 972 F.2d 1129, 1141 (9th
14 Cir. 1992)). This rule applies even if the employee's classification as temporary was erroneous. *Id.*
15 (citing *Kreutzer v. v. City & County of San Francisco*, 166 Cal. App. 4th 306, 309 (2008)). A
16 temporary employee can show a property interest like that of a permanent employee only if "he can
17 demonstrate that he was hired in a manner that complied with the civil service requirements for the
18 relevant civil service position, *and* that the City lacked authority under the applicable statute(s) to
19 hire him as a non-civil service employee." *Id.* at 24 (emphasis in original) (citing *McGillicuddy v.
20 Civil Serv. Comm'n*, 133 Cal. App. 782, 784 (Ct. App. 1933)). While Plaintiff alleges that he was
21 hired in a manner that complies with the civil service requirements, this Court previously found that
22 Plaintiff failed to allege facts showing that Defendant lacked authority to hire him as a non-civil
23 service employee. *Id.* at 25-26. The facts Plaintiff offers on his motion for reconsideration do
24 nothing to call into dispute whether Defendant had the authority to hire him under provisions in the
25 City Charter providing for the hire of temporary, non-civil service employees. To the degree that
26 Plaintiff argues that the facts he alleges on reconsideration call into question Defendant's ability to
27 hire him under these provisions of the City Charter because he was performing out of classification
28 work, this argument fails because it does not distinguish *Kreutzer v. v. City & County of San*

1    *Francisco*, 166 Cal. App. 4th 306, 309 (2008), as discussed below.

2        Accordingly, Plaintiff's allegedly new facts do nothing to change the finding that he has not
3    made the requisite showing to establish that he is entitled to the protections and property interests of
4    a permanent civil service employee. As noted below, his emphasis that he was hired to perform
5    out-of-classification work from the outset is not new and does not change the legal analysis of the
6    due process claim.

7        As Plaintiff has not shown the emergence of any new material facts after the August 29
8    order, he has not shown grounds for leave to file a motion for reconsideration under Local Rule 7-
9    9(b)(2).

10       2.    <u>Failure of the Court to Consider Material Facts or Dispositive Legal Arguments</u>

11       Plaintiff also argues that reconsideration is proper because this Court failed to consider
12   material facts and dispositive legal arguments in its order dismissing the claim with prejudice.
13   Specifically, Plaintiff argues that this Court failed to consider his argument "that Plaintiff's hiring
14   was unlawful *ab initio* and was part of an intentionally unlawful scheme from the outset," and that
15   "Defendants lacked authority *from the outset* to hire Plaintiff as a temporary exempt employee."
16   Reply at 3.

17       As this Court stated in its previous order, "A temporary exempt employee may only claim a
18   property interest on par with permanent employee status if he can demonstrate that he was hired in a
19   manner that complied with the civil service requirements for the relevant civil service position, *and*
20   that the City lacked authority under the applicable statute(s) to hire him as a non-civil service
21   employee." August 29 Order at 24. As the August 29 Order notes, cases finding that the city lacked
22   authority to hire an employee to a non-civil service position have limited this exception to
23   circumstances where the appointment process itself was faulty and unlawful. *Id*. at 24 (citing
24   *McGillicuddy v. Civil Serv. Comm'n*, 133 Cal. App. 782, 784 (1933); *Villain v. Civil Serv. Comm'n*
25   *of San Francisco*, 18 Cal. 2d 851, 859 (1941); *Shepherd v. Jones*, 136 Cal. App. 3d 1049, 1057
26   (1982); *Ticknor v. City of Sacramento*, 80 Cal. App. 2d 284, 288, 181 P.2d 893, 895 (1947);
27   *Matherly v. Allen*, 86 Cal. App. 2d 95, 99 (1948); *Fewer v. City & County of San Francisco*, 240 F.
28   App'x 185, 186 (9th Cir. 2007)). Allegations that a temporary non-civil service employee has

performed work outside his class is not sufficient. *Kreutzer v. v. City & County of San Francisco*, 166 Cal. App. 4th 306, 309 (2008).

The August 29 Order stated that the parties did not dispute that Defendants were authorized to hire Plaintiff as a temporary non-civil service employee pursuant to paragraph 18 of Section 10.104 of the City Charter. August 29 Order at 25-26. Plaintiff now argues that this misstates his position. He contends that his argument was that hire under this section because unlawful *ab initio* because Defendants intended from the outset to assign him duties inappropriate to a temporary employee, and that they only classified him as temporary to skirt budgetary limitations on hiring permanent employees. Mot. to Reconsider at 3. Plaintiff neglects to cite to any part of the record where he previously made this argument.

Plaintiff argues that this Court erroneously concluded that he was not contending that his appointment was unlawful *ab initio* because this Court interpreted the oral argument representations of Plaintiff's counsel overly narrowly. Mot. to Reconsider at 2; Reply at 3. Specifically, the August 29 Order notes that:

> Here, as Plaintiff's counsel confirmed at oral argument, Plaintiff's sole claim to permanent employee status is his allegation that he was misclassified because he functionally performed the duties of a permanent employee and because his duties conflicted with those permissible under temporary exempt status.

August 29 Order at 24. Plaintiff states that he "did not intend to isolate this fact as the sole basis for Plaintiff's due process claim arising out of a loss of property," but he does not cite to the transcript of this hearing to support a different interpretation of counsel's statements; it does not appear that the transcript of the hearing is on the record.

In addition to relying upon the representations of Plaintiff's counsel at the hearing, the August 29 Order cited to paragraphs 19-25 of the Fourth Amended Complaint to support the conclusion that Plaintiff's only argument for misclassification was based on out of class work duties. Relevant sections of those paragraphs include:

> 19. Plaintiff and the other five employees' hiring and employment as a "temporary exempt" violated California law. Article Ten of the City Charter requires that a temporary exempt employee work exclusively on one capital improvement project. However, Plaintiff and other employees worked on all

9

> department tasks, many of which were not capital improvement projects, in violation of the Article. . . .
>
> 20. Despite the fact that Plaintiff met every condition for permanent employment and was assigned tasks appropriate for a permanent employee and not a temporary and not a temporary exempt employee under the City Charter, he was forced to labor under the implicit threat of firing or layoff because he was listed under the category of employees exempt from rights normally accorded permanent city employees.

FAC ¶¶ 19-20. In this section of the complaint, Plaintiff contends that he was "worked out of class from the first day of his employment," that he "was working two and three steps out of class for most of his tenure," and that he "continued to work above class until the day of his termination." FAC ¶¶ 22, 23, 27. He alleges that Mr. Storrs "repeatedly acknowledged" that Plaintiff was "running the field and ordered and trained to do work at the managerial level," but that Mr. Storrs refused to formally promote Plaintiff. FAC ¶ 24.

The order of August 29 fully considers Plaintiff's argument that he is entitled to the protections of a civil service employee because he performed out of class duties, and takes into account his allegations that he performed them *throughout his employment*. August 29 Order at 23-24. The order acknowledges his allegations that he worked out of class *from the first day of his employment* and that this was part of a larger illegal scheme to improperly hire temporary rather than permanent workers. *Id.* at 2-3. In the order, this Court held that "[a]lthough Plaintiff alleges he was *wrongfully hired as a temporary employee* and that he should have been a permanent employee, such an allegation does not vest him with a property interest in his employment." *Id.* (emphasis added).

While this Court's analysis on the question of Plaintiff's due process property claim considers the argument that he was misclassified from his first day of work, it does not discuss his allegation that he was improperly classified because of a larger illegal scheme to avoid budgetary restrictions on permanent employees. August 29 Order at 22-27. The order does consider these arguments in the analysis of one of his other claims of action. *Id.* at 17-20. The reason why the Court did not consider this argument in the section on the due process claim is because Plaintiff did not address that argument to that claim in his opposition to the motion to dismiss.

In his opposition to Defendant's motion to dismiss, Plaintiff had argued that he was entitled to civil service protections because he had performed the duties of a permanent worker. Pl.'s Opp. to Mot. to Dismiss FAC at 11-12 (Docket No. 45). He did not, however argue that Defendants hired Plaintiff with the specific intention that he perform work reserved for permanent employees, nor did he emphasize the point that he performed misclassified work from the outset of his employment. *Id.* He stated simply that "despite that temporary exempt designation given to him, Plaintiff was actually performing the job of a permanent worker in violation of governing law." *Id.* at 11. He argued that because he "performed the tasks and undertook the responsibilities of a permanent employee [he] is consequently a permanent employee for the purposes of California law." *Id.* at 12. Nowhere in his argument on the due process claim did Plaintiff press the argument that he now raises in his motion for reconsideration.

As the August 29 order clearly and thoroughly addressed the factual and legal arguments Plaintiff offered on the due process property claim, he has failed to show "[a] manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order." Local Rule 7-9(b).

Accordingly, Plaintiff has not shown grounds to permit him to file a motion for reconsideration under Local Rule 7-9(b)(3).

C.  Motion for Reconsideration

Even if the Court were to consider Plaintiff's motion for reconsideration, it would deny that motion. A motion for reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir.2000). Thus, "a motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir.1999). A motion for reconsideration cannot be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation. *Kona Enters.*, 229 F.3d at 890.

Plaintiff alleges nothing in his motion for reconsideration to indicate that the facts and

11

1 arguments he presents could not have been raised in his opposition to the motion to dismiss.
2 Furthermore, it would seem that his arguments fail as a matter of law.

3 In his motion for reconsideration, Plaintiff does not mention any of the cases cited by this Court in the August 29 order except for *McGillicuddy v. Civil Serv. Comm'n,* 133 Cal. App. 782, 784 (Ct. App. 1933). He does not contest the Court's interpretation of *McGillicuddy*, nor does he discuss its application to the facts in his case in any depth. He states only that he "always intended to plead facts that would satisfy the standard set forth in *McGillicuddy* [citation omitted], and thereby support a valid claim for a denial of due process based on Plaintiff's loss of property." Pl.'s Mot. for Reconsideration at 2.

In *McGillicuddy v. Civil Serv. Comm'n*, the court found that the plaintiffs were entitled to be considered permanent civil service employees because the city charter then in effect did not permit the hiring of temporary employees to their positions. 133 Cal. App. 782, 784 (Ct. App. 1933). The city charter provided that temporary employees could only be hired "to prevent the stoppage of public business, or to meet extraordinary exigencies," and then could only be appointed for a maximum of 60 days or until a regular civil service appointment could be made, whichever came earlier. *Id.* There, the reason the reason that the employees were not properly classified as temporary concerned the procedural requirements for appointment, not the substance of the work that the employee was hired to perform.

Plaintiff makes no mention of *Kreutzer v. City & County of San Francisco*, the key case holding that employees may not challenge their temporary classification based solely on performing out of class duties. 166 Cal. App. 4th 306 (Ct. App. 2008). None of his arguments successfully distinguish his situation from the plaintiff's in *Kreutzer*. In that case, as here, the plaintiff was hired specifically to perform the allegedly out of class duties. *Id.* at 309-11. The plaintiff in that case was a physician who had been hired as the part-time medical director for a city-run clinic, and who subsequently took other part-time positions as medical director for other city clinics. *Id.* at 309-11. He was hired as a Physician Specialist, and later promoted to a Senior Physician Specialist, both positions exempt from the city's civil service system. *Id.* at 310. He did not go through the civil service hiring process. *Id.* at 309-11. Some years later, the plaintiff was terminated, and he

12

1  subsequently brought suit for retaliatory discharge, and a violation of his due process rights. *Id.* at
2  312. His due process claim was based on the argument that he had been misclassified as exempt
3  from the civil service system, and should be entitled to the protections of a civil service employee.
4        The plaintiff in *Kreutzer* had been appointed under a provision in the San Francisco City
5  Charter that provided that "[t]he following positions shall be exempt from competitive civil service
6  selection, appointment and removal procedures, and the person serving in the position shall serve at
7  the pleasure of the appointing authority: ... physicians and dentists serving in their professional
8  capacity (except those physicians and dentists whose duties are significantly administrative or
9  supervisory)." 166 Cal. App. 4th at 313 (quoting San Francisco City Charter § 10.104). The trial
10 court had found as a factual matter that the plaintiff's duties had been significantly administrative or
11 supervisory. *Id.* Nevertheless, the appeals court found that the plaintiff was not entitled to the
12 protections of a civil service employee. *Id.* at 314-15. It noted that "[i]t has been the law in
13 California, at least since 1938, that a fundamental principle of the civil service system is that
14 employees do not become entitled to occupy positions in classifications other than the ones to which
15 they were appointed merely by virtue of having been assigned duties that properly belong to a higher
16 classification, and that if the rule were otherwise, 'the entire fabric of the civil service system would
17 fail.'" *Id.* (quoting *Pinion v. State Personnel Board*, 29 Cal. App.2d 314, 319 (Ct. App. 1938)).
18       The *Kreutzer* court explicitly rejected the plaintiff's attempt to distinguish previous cases
19 where temporary employees had assumed out of class duties only after some period of employment.
20 *Id.* at 315-16. The court held that "[t]he remedy for such misclassification [from the initial moment
21 of hire] is an application to the Commission for reclassification of the position, not a post hoc
22 decision by a court to grant civil service protection to an exempt employee who did not go through
23 the civil service hiring process before being appointed to the position." *Id.* at 316.
24       Like the plaintiff in *Kreutzer*, Plaintiff here was also appointed under § 10.104 of the San
25 Francisco City Charter, though in his case, the relevant subsection reads:

> The following positions shall be exempt from competitive civil service
> selection, appointment and removal procedures, and the person serving
> in the position shall serve at the pleasure of the appointing authority:
> . . .
> 18. Appointments, which shall not exceed three years and shall not

>be renewable, for special projects and professional services with limited term funding, except that such positions may be filled through regular civil service procedures.

Plaintiff argues that he did in fact comply with the civil service hiring requirements, and perhaps in this sense his case may be distinguishable from *Kreutzer*. This fact, however, is not out of step with the temporary classification in which he was hired, which allows temporary employees to be hired through the regular civil service procedures. *See* August 29 Order at 25 (discussing this provision). Though § 10.104 ¶ 18 allows temporary positions to be filled through regular civil service procedures, § 10.104 also exempts such employees from the removal procedures associated with civil service positions, and ¶ 18 contains no indication that temporary employees hired through the civil service process acquire the removal protections of civil service employees.

Plaintiff argues that his appointment under this provision was unlawful because he had duties beyond "special projects and professional services with limited term funding." 5AC ¶ 19. In this respect, however, Plaintiff's situation is indistinguishable from that of the plaintiff in *Kreutzer*. In both cases, the employee is arguing to be re-classified based on the fact that from the beginning of his employment, he performed work outside the scope of the city charter provision under which he was appointed. *See Kreutzer*, 166 Cal. App. 4th at 313.

Finally, nothing in *Kreutzer* suggests that the fact that the employee was assigned out-of-classification duties from the outset of the job or that such an assignment was part of a deliberate plan by the employer changes the legal analysis of the due process claim. In *Kreutzer*, the plaintiff worked out of his class from the first day of employment, and it seems obvious that this was known and intended by his employer. Yet *Kreutzer* rejected plaintiff's due process claim.

Plaintiff offers nothing to successfully establish that he is entitled to a result different from that of the plaintiff in *Kreutzer*. As such, his motion for reconsideration fails on the merits.

///
///
///
///
///

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's motion for reconsideration is **DENIED**.

This order disposes of Docket No. 56.

IT IS SO ORDERED.

Dated: November 19, 2012

_____
EDWARD M. CHEN
United States District Judge