**United States District Court**
For the Northern District of California

1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                  NORTHERN DISTRICT OF CALIFORNIA

7

8   PETER TURNER                          No. C-11-1427 EMC

9              Plaintiff,

10      v.                                **ORDER DENYING PLAINTIFF'S**
                                          **MOTION FOR RECONSIDERATION**
11  CITY AND COUNTY OF SAN
    FRANCISCO, *et al.*,                  **(Docket No. 56)**
12

13              Defendants.
    _____/

14

15

16                      I.    **INTRODUCTION**

17          Pending before the court is Plaintiff's motion for reconsideration of this Court's August 29,

18  2012 order dismissing with prejudice Plaintiff's claim for violation of his Fourteenth Amendment

19  property interests.[1]  Plaintiff did not first seek leave to file the motion for reconsideration, as is

20  required under Local Rule 7-9.

21              II.    **FACTUAL & PROCEDURAL BACKGROUND**

22          Plaintiff brings suit against the City and County of San Francisco (CCSF), the San Francisco

23  Department of Public Works (DPW), and various individuals, alleging various violations of

24  California state law and the Federal Constitution in connection with his employment with DPW.  On

25  July 6, 2012 Defendants moved to dismiss his Fourth Amended Complaint (FAC).  Docket No. 42.

26

27          [1]  Plaintiff actually titles his motion a Motion for Leave to File Amended Claim Stating Facts
    to Support Due Process Claim Arising out of Property Interest.  In his reply, however, he concedes
28  that his motion is in fact a motion for reconsideration of the August 29, 2012 order dismissing this
    claim with prejudice, and thus subject to Local Rule 7-9 on motions for reconsideration.

**United States District Court**
For the Northern District of California

Plaintiff's allegations as of the time of the motion, as recited in the August 29 order on the motion to dismiss, are as follows.

Plaintiff began applying for a position with DPW in 2003.  FAC ¶ 8.  He applied for three positions with the City and County of San Francisco: (1) survey assistant or "5310," (2) survey assistant 2 or "5312"; and (3) survey associate or "5314."  *Id.*  Plaintiff alleges he was qualified for each position but never hired.  He then applied for a survey assistant 2 position with the Millbrae office of SFPUC in 2005, for which he was also qualified but not hired.  FAC ¶ 9.  He again applied for two 5310 positions in 2006 with DPW, for which he was not hired.  FAC ¶¶ 10-11.  Instead, less qualified people favored by Defendant Storrs received the position.  *Id.*

Another 5310 position opened up in early 2007, for which Plaintiff again applied.  FAC ¶ 13.  Plaintiff interviewed for the position, and then took the civil service exams for all three survey positions.  FAC ¶¶ 13-14.  Plaintiff received the highest score on all three exams.  FAC ¶¶ 14, 35-38.  Plaintiff was hired for a survey assistant position.  FAC ¶ 15.

On June 19, 2007, Plaintiff began work as a survey assistant.  FAC ¶ 16.  However, he alleges he was not informed that he had been hired as a temporary exempt employee, rather than in a permanent civil service position, until the day he started work.  FAC ¶ 17.  He had interviewed and tested for a permanent position.  FAC ¶ 17.  Five others were also hired as temporary exempts.  FAC ¶ 18.  Plaintiff alleges it was illegal to hire him and others as temporary exempts because Article Ten of the City Charter requires such employees to work on only one capital improvement project; in contrast, Plaintiff worked on numerous tasks throughout the department.  FAC ¶ 19.  He further alleges that he worked out of class from the first day of his employment and was given extra responsibility not commensurate with his low pay and temporary status.  FAC ¶¶ 22-24.  Plaintiff's high level of responsibility did not comport with Defendant Storrs's public acknowledgment of Plaintiff's role, and Mr. Storrs refused to officially promote him.  FAC ¶¶ 24-25.  Mr. Storrs and Mr. Hanley (the Chief Surveyor) also attempted to force Plaintiff to sign off on maps and surveys he had not seen, and Mr. Hanley falsely signed maps based on surveys Plaintiff had done.  FAC ¶ 26.

Plaintiff continued to attempt to obtain a promotion and/or permanent status.  Later in 2007, three survey associate positions opened up, but Plaintiff was told not to apply for them because Mr.

United States District Court

For the Northern District of California

1   Storrs had already selected people for them.  FAC ¶ 21.  All three new hires were for permanent

2   positions, although two people were less qualified than Plaintiff and a third tested lower than

3   Plaintiff.  *Id.*

4          DPW's use of temporary exempt employees, and failure to use objective criteria to hire

5   permanent employees, resulted in negligent surveying work.  FAC ¶¶ 28-29.  Plaintiff alleges that

6   the temporary exempt hiring practices were part of a larger scheme, through which DPW underbid

7   on survey work in order to "corner the market," and made up the money by overcharging the public

8   for "mapping fund fees."  FAC ¶¶ 30-32.  Mr. Storrs acknowledged that this set-up "made the

9   department money."  FAC ¶ 32.  Plaintiff alleges it was illegal to use mapping fund fees to offset the

10  cost of low survey bids.  FAC ¶ 31.

11         Plaintiff "began speaking out against" Defendants' practices, including "at staff meetings; at

12  union meetings; and in face-to-face meetings with Mr. Storrs and DPW and Human Resources

13  officials.  Plaintiff also repeatedly raised the fact that he and other temporary exempts were working

14  out of class on a regular basis."  FAC ¶ 32.  Mr. Storrs and other DPW officials knew of Plaintiff's

15  concerns.  FAC ¶ 33.  At some point, "Plaintiff was assigned to map checking, a position Storrs

16  openly acknowledged he used to punish individuals who did not 'follow instructions.'"  FAC ¶ 40.

17         Plaintiff alleges further that in 2009, the Human Resources Department sabotaged Plaintiff's

18  efforts to apply for survey work at the airport.  FAC ¶ 41.  In response, "he wrote to the Human

19  Resources agent handling the position and told her that he planned to expose these policies and

20  report them to whatever authority would hold them responsible."  FAC ¶ 42.  In the aftermath of this

21  letter, Plaintiff was summoned to a meeting with Defendants Wong, Moy, and Storrs, in which he

22  was "asked hostile and intimidating questions by Storrs."  FAC ¶ 43.  Plaintiff again voiced his

23  concerns about Defendants' unlawful practices in the meeting.  FAC ¶ 44.  Immediately thereafter,

24  Mr. Storrs informed Plaintiff he would be fired.  FAC ¶ 45.  DPW Director Reiskin sent Plaintiff a

25  letter the next day confirming his termination.  *Id.*  After he was fired, DPW refused to provide

26  Plaintiff with information about continuing health insurance and available coverage.  FAC ¶ 46.

27         After his termination, Plaintiff continued to seek opportunities to apply for posted survey

28  positions with the City, but Storrs was permitted to select his choices "without regard to objective

3

1  standards." FAC ¶¶ 47-50. Defendant Urbina "ignored" his application, and informed him that his

2  application had been rejected. FAC ¶ 49.

3  　　　　Plaintiff further alleges that as of June 2010, the five temporary exempts working for DPW

4  were rendered permanent employees when their employment continued after their exempt tenure

5  expired. FAC ¶ 51. Plaintiff alleges this practice violated Rule 18 of Article 10 of the City Charter.

6  Id. They were hired as temporary exempts "to allow for vetting and subjective selection of

7  employees in violation of the City Charter." *Id.*

8  　　　　On August 29, 2012, this Court granted in part and denied in part Defendants' motion to

9  dismiss Plaintiff's Fourth Amended Complaint. Order Granting in Part and Denying in Part

10  Defendants' Motion to Dismiss (Docket No. 49) ("August 29 Order"). In this order, this Court

11  dismissed with prejudice Plaintiff's due process claim under the Fourteenth Amendment to the

12  degree that it was based on a property interest. *Id.* at 22-27. This Court found that Plaintiff was

13  unable to show that he had a property interest in his employment with DPW despite the fact that he

14  was only a temporary employee. *Id.*

15  　　　　　　　　　　　　　　**III.　DISCUSSION**

16  A.　　Plaintiff's Failure to Comply with Local Rule 7-9

17  　　　　As a preliminary matter, Plaintiff failed to move for leave to file a motion for

18  reconsideration. Plaintiff states that his motion "set forth sufficient argument and authority that

19  would allow for this Court to grant Plaintiff leave to file a motion for reconsideration, as well as

20  sufficient argument and authority for the Court to grant Plaintiff's leave to amend the complaint."

21  Pl.'s Reply at 1. He argues that the fact that he used one motion for both requests "should not

22  obscure the fact that Plaintiff meets the requirements of Local Rule 7-9 and that granting Plaintiff

23  leave to file a motion for reconsideration is appropriate given the circumstances." *Id.*

24  　　　　Plaintiff's argument here neglects the plain meaning of Rule 7-9, which provides that "No

25  party may notice a motion for reconsideration *without first obtaining leave of Court* to file the

26  motion." Local Rule 7-9(a). Under the terms of this rule, Plaintiff is required to obtain leave of

27  Court *before* noticing his motion for reconsideration. This he failed to do. Even treating his motion

28

United States District Court
For the Northern District of California

1   as a request for leave to file a motion for reconsideration, however, he has failed to demonstrate that

2   he should be entitled to file a motion for reconsideration.

3   B.      Grounds for Leave to File Motion for Reconsideration under Local Rule 7-9

4           Local Rule 7-9 also sets out substantive requirements for motions for leave to file motions

5   for reconsideration.  It provides that before the moving party will be permitted to file a motion for

6   reconsideration, he or she must show one of three things:

7           (1)     That at the time of the motion for leave, a material difference
                    in fact or law exists from that which was presented to the Court
8                   before entry of the interlocutory order for which
                    reconsideration is sought. The party also must show that in the
9                   exercise of reasonable diligence the party applying for
                    reconsideration did not know such fact or law at the time of the
10                  interlocutory order; or

11          (2)     The emergence of new material facts or a change of law
                    occurring after the time of such order; or
12

            (3)     A manifest failure by the Court to consider material facts or
13                  dispositive legal arguments which were presented to the Court
                    before such interlocutory order.
14

15  Local Rule 7-9(b).  In his motion, Plaintiff argues that he has successfully shown both (2) and (3).

16          1.      Emergence of New Material Facts or a Change of Law

17          Plaintiff argues that new material facts have emerged since the Court's order.  Specifically,

18  he cites the October 3, 2012 deposition testimony of Paresh Chhanya, which he alleges shows that

19  Defendants falsified accounts to hide city spending on certain projects, and that this practice resulted

20  in Plaintiff's being hired as a temporary employee when he should have been classified as

21  permanent.  Reply at 2.

22          Plaintiff's argument that this constitutes a new material fact on which to base his motion for

23  leave to file a motion for reconsideration, however, is flawed for two main reasons.  First, he offers

24  no explanation why he could not have discovered and presented any information from Mr.

25  Chhanya's deposition in his opposition to Defendant's motion to dismiss.  Second, he fails to

26  establish that any information discovered in this deposition is material to the question of whether he

27  has articulated a viable due process claim based on a property interest in his employment.

28          Plaintiff cites specifically to a part of the deposition where Mr. Chhanya is discussing the

**United States District Court**
For the Northern District of California

process for filling out timecards that he followed when he was a temporary employee.  Reply at 2,

Ex. A at 17-22.  Mr. Chhanya testified that during his time as a temporary employee, he would

initially fill out his time sheets using a project code provided by the supervisor who assigned him to

his job for each day.  Reply Ex. A at 20.  This timesheet would then be reviewed by the accounting

department, which would at times change the project code before the final submission of the official

timecard.  *Id.* at 20-23.  Mr. Chhanya testified that for some period of time, Plaintiff himself was

involved in the oversight of temporary employee timecards.  *Id.* at 16.

The deposition contains clear indications that Plaintiff was likely aware this timecard system.

Mr. Chhanya does not seem to possess any inside knowledge of how decisions are made about

project classifications on timecards; he was testifying only to his experience filling out timecards as

a temporary employee.  Plaintiff was a temporary employee at the same time as Mr. Chhanya and

presumably had the same system for filling out time cards.  Indeed, Mr. Chhanya even states that

Plaintiff himself was involved in overseeing the timecards of temporary workers for some period of

time.  Plaintiff offers nothing to indicate that the timecard system described by Mr. Chhanya was

previously unknown to him.  He thus fails to establish that he could not, with reasonable diligence,

have discovered and presented this information prior to the August 29 Order.

Additionally, Plaintiff fails to establish that Mr. Chhanya's deposition provides him with

new material facts, or any new facts at all.  Plaintiff represents that Mr. Chhanya stated that

timesheets were routinely altered because "My basic understanding is that sometimes - - we are

enterprise-based, so we generate our own.  A lot of times projects will go - - would have budgets and

they may increase to - - keep accounting balances.  You may be working on a job or even being

billed to another job."  Reply at 2.  In context, it is not entirely clear whether Mr. Chhanya's

comments relate to the practice of altering job codes, or to the practice of listing job codes at all.

*See* Reply Ex. A at 21-22.

Regardless, Plaintiff does not allege that Mr. Chhanya's deposition provided him with new

information, only with additional confirmation of actions he already believed the DPW was

undertaking.  For example, he describes the evidence in Mr. Chhanya's deposition as "*confirming*

that the City falsified information on timesheets in order to fund projects on which temporary

6

**United States District Court**
For the Northern District of California

1  exempt employees worked for which there were no authorized funds available."  Reply at 2

2  (emphasis added).  Plaintiff notes that "[t]his testimony *affirms* the fact that Defendants were

3  engaged in falsifying accounts and reveals that the motive behind this practice was to hide the fact

4  that the City was spending more on projects than initially authorized."  *Id.* (emphasis added).

5  Plaintiff states that Defendants engaged in an illegal scheme that resulted in improperly hiring him

6  as a temporary employee, and notes that he "*realleges this fact with renewed vigor* following the

7  recent discovery of material facts that support a finding that Defendants were involved in the

8  falsifying of reports to perform work and hire employees for which no authorization existed."  *Id.* at

9  2-3 (emphasis added).

10         In any case, Plaintiff fails to show how this new information is relevant to the question of

11  whether he had a property interest in his employment.  As discussed in the August 29 Order and

12  below, temporary non-civil service employees generally do not have a property interest in their

13  employment. *See* August 29 Order at 22-23 (citing *Hyland v. Wonder*, 972 F.2d 1129, 1141 (9th

14  Cir. 1992)).  This rule applies even if the employee's classification as temporary was erroneous. *Id.*

15  (citing *Kreutzer v. v. City & County of San Francisco*, 166 Cal. App. 4th 306, 309 (2008)).  A

16  temporary employee can show a property interest like that of a permanent employee only if "he can

17  demonstrate that he was hired in a manner that complied with the civil service requirements for the

18  relevant civil service position, *and* that the City lacked authority under the applicable statute(s) to

19  hire him as a non-civil service employee." *Id.* at 24 (emphasis in original) (citing *McGillicuddy v.*

20  *Civil Serv. Comm'n*, 133 Cal. App. 782, 784 (Ct. App. 1933)).  While Plaintiff alleges that he was

21  hired in a manner that complies with the civil service requirements, this Court previously found that

22  Plaintiff failed to allege facts showing that Defendant lacked authority to hire him as a non-civil

23  service employee. *Id.* at 25-26.  The facts Plaintiff offers on his motion for reconsideration do

24  nothing to call into dispute whether Defendant had the authority to hire him under provisions in the

25  City Charter providing for the hire of temporary, non-civil service employees.  To the degree that

26  Plaintiff argues that the facts he alleges on reconsideration call into question Defendant's ability to

27  hire him under these provisions of the City Charter because he was performing out of classification

28  work, this argument fails because it does not distinguish *Kreutzer v. v. City & County of San*

7

1  *Francisco*, 166 Cal. App. 4th 306, 309 (2008), as discussed below.

2       Accordingly, Plaintiff's allegedly new facts do nothing to change the finding that he has not

3  made the requisite showing to establish that he is entitled to the protections and property interests of

4  a permanent civil service employee. As noted below, his emphasis that he was hired to perform

5  out-of-classification work from the outset is not new and does not change the legal analysis of the

6  due process claim.

7       As Plaintiff has not shown the emergence of any new material facts after the August 29

8  order, he has not shown grounds for leave to file a motion for reconsideration under Local Rule 7-

9  9(b)(2).

10      2.      Failure of the Court to Consider Material Facts or Dispositive Legal Arguments

11      Plaintiff also argues that reconsideration is proper because this Court failed to consider

12 material facts and dispositive legal arguments in its order dismissing the claim with prejudice.

13 Specifically, Plaintiff argues that this Court failed to consider his argument "that Plaintiff's hiring

14 was unlawful *ab initio* and was part of an intentionally unlawful scheme from the outset," and that

15 "Defendants lacked authority *from the outset* to hire Plaintiff as a temporary exempt employee."

16 Reply at 3.

17      As this Court stated in its previous order, "A temporary exempt employee may only claim a

18 property interest on par with permanent employee status if he can demonstrate that he was hired in a

19 manner that complied with the civil service requirements for the relevant civil service position, *and*

20 that the City lacked authority under the applicable statute(s) to hire him as a non-civil service

21 employee." August 29 Order at 24. As the August 29 Order notes, cases finding that the city lacked

22 authority to hire an employee to a non-civil service position have limited this exception to

23 circumstances where the appointment process itself was faulty and unlawful. *Id*. at 24 (citing

24 *McGillicuddy v. Civil Serv. Comm'n*, 133 Cal. App. 782, 784 (1933); *Villain v. Civil Serv. Comm'n*

25 *of San Francisco*, 18 Cal. 2d 851, 859 (1941); *Shepherd v. Jones*, 136 Cal. App. 3d 1049, 1057

26 (1982); *Ticknor v. City of Sacramento*, 80 Cal. App. 2d 284, 288, 181 P.2d 893, 895 (1947);

27 *Matherly v. Allen*, 86 Cal. App. 2d 95, 99 (1948); *Fewer v. City & County of San Francisco*, 240 F.

28 App'x 185, 186 (9th Cir. 2007)). Allegations that a temporary non-civil service employee has

United States District Court
For the Northern District of California

8

United States District Court

For the Northern District of California

1  performed work outside his class is not sufficient. *Kreutzer v. v. City & County of San Francisco*,

2  166 Cal. App. 4th 306, 309 (2008).

3      The August 29 Order stated that the parties did not dispute that Defendants were authorized

4  to hire Plaintiff as a temporary non-civil service employee pursuant to paragraph 18 of Section

5  10.104 of the City Charter. August 29 Order at 25-26. Plaintiff now argues that this misstates his

6  position. He contends that his argument was that hire under this section because unlawful *ab initio*

7  because Defendants intended from the outset to assign him duties inappropriate to a temporary

8  employee, and that they only classified him as temporary to skirt budgetary limitations on hiring

9  permanent employees. Mot. to Reconsider at 3. Plaintiff neglects to cite to any part of the record

10  where he previously made this argument.

11      Plaintiff argues that this Court erroneously concluded that he was not contending that his

12  appointment was unlawful *ab initio* because this Court interpreted the oral argument representations

13  of Plaintiff's counsel overly narrowly. Mot. to Reconsider at 2; Reply at 3. Specifically, the August

14  29 Order notes that:

15          Here, as Plaintiff's counsel confirmed at oral argument, Plaintiff's sole
           claim to permanent employee status is his allegation that he was
16          misclassified because he functionally performed the duties of a
           permanent employee and because his duties conflicted with those
17          permissible under temporary exempt status.

18  August 29 Order at 24. Plaintiff states that he "did not intend to isolate this fact as the sole basis for

19  Plaintiff's due process claim arising out of a loss of property," but he does not cite to the transcript

20  of this hearing to support a different interpretation of counsel's statements; it does not appear that

21  the transcript of the hearing is on the record.

22      In addition to relying upon the representations of Plaintiff's counsel at the hearing, the

23  August 29 Order cited to paragraphs 19-25 of the Fourth Amended Complaint to support the

24  conclusion that Plaintiff's only argument for misclassification was based on out of class work duties.

25  Relevant sections of those paragraphs include:

26          19.    Plaintiff and the other five employees' hiring and employment
                  as a "temporary exempt" violated California law. Article Ten
27                of the City Charter requires that a temporary exempt employee
                  work exclusively on one capital improvement project.
28                However, Plaintiff and other employees worked on all

9

**United States District Court**

For the Northern District of California

1          department tasks, many of which were not capital improvement
           projects, in violation of the Article. . . .

2

3   20.    Despite the fact that Plaintiff met every condition for
           permanent employment and was assigned tasks appropriate for
4          a permanent employee and not a temporary and not a
           temporary exempt employee under the City Charter, he was
5          forced to labor under the implicit threat of firing or layoff
           because he was listed under the category of employees exempt
6          from rights normally accorded permanent city employees.

7   FAC ¶¶ 19-20.  In this section of the complaint, Plaintiff contends that he was "worked out of class

8   from the first day of his employment," that he "was working two and three steps out of class for

9   most of his tenure," and that he "continued to work above class until the day of his termination."

10  FAC ¶¶ 22, 23, 27.  He alleges that Mr. Storrs "repeatedly acknowledged" that Plaintiff was

11  "running the field and ordered and trained to do work at the managerial level," but that Mr. Storrs

12  refused to formally promote Plaintiff.  FAC ¶ 24.

13          The order of August 29 fully considers Plaintiff's argument that he is entitled to the

14  protections of a civil service employee because he performed out of class duties, and takes into

15  account his allegations that he performed them *throughout his employment*.  August 29 Order at 23-

16  24.  The order acknowledges his allegations that he worked out of class *from the first day of his*

17  *employment* and that this was part of a larger illegal scheme to improperly hire temporary rather than

18  permanent workers.  *Id.* at 2-3.  In the order, this Court held that "[a]lthough Plaintiff alleges he was

19  *wrongfully hired as a temporary employee* and that he should have been a permanent employee,

20  such an allegation does not vest him with a property interest in his employment."  *Id.* (emphasis

21  added).

22          While this Court's analysis on the question of Plaintiff's due process property claim

23  considers the argument that he was misclassified from his first day of work, it does not discuss his

24  allegation that he was improperly classified because of a larger illegal scheme to avoid budgetary

25  restrictions on permanent employees.  August 29 Order at 22-27.  The order does consider these

26  arguments in the analysis of one of his other claims of action.  *Id.* at 17-20.  The reason why the

27  Court did not consider this argument in the section on the due process claim is because Plaintiff did

28  not address that argument to that claim in his opposition to the motion to dismiss.

**United States District Court**
For the Northern District of California

1    In his opposition to Defendant's motion to dismiss, Plaintiff had argued that he was entitled

2 to civil service protections because he had performed the duties of a permanent worker.  Pl.'s Opp.

3 to Mot. to Dismiss FAC at 11-12 (Docket No. 45).  He did not, however argue that Defendants hired

4 Plaintiff with the specific intention that he perform work reserved for permanent employees, nor did

5 he emphasize the point that he performed misclassified work from the outset of his employment.  *Id.*

6 He stated simply that "despite that temporary exempt designation given to him, Plaintiff was

7 actually performing the job of a permanent worker in violation of governing law."  *Id.* at 11.  He

8 argued that because he "performed the tasks and undertook the responsibilities of a permanent

9 employee [he] is consequently a permanent employee for the purposes of California law."  *Id.* at 12.

10 Nowhere in his argument on the due process claim did Plaintiff press the argument that he now

11 raises in his motion for reconsideration.

12    As the August 29 order clearly and thoroughly addressed the factual and legal arguments

13 Plaintiff offered on the due process property claim, he has failed to show "[a] manifest failure by the

14 Court to consider material facts or dispositive legal arguments which were presented to the Court

15 before such interlocutory order."  Local Rule 7-9(b).

16    Accordingly, Plaintiff has not shown grounds to permit him to file a motion for

17 reconsideration under Local Rule 7-9(b)(3).

18 C.    Motion for Reconsideration

19    Even if the Court were to consider Plaintiff's motion for reconsideration, it would deny that

20 motion.  A motion for reconsideration is an "extraordinary remedy, to be used sparingly in the

21 interests of finality and conservation of judicial resources."  *Kona Enters. v. Estate of Bishop*, 229

22 F.3d 877, 890 (9th Cir.2000).  Thus, "a motion for reconsideration should not be granted, absent

23 highly unusual circumstances, unless the district court is presented with newly discovered evidence,

24 committed clear error, or if there is an intervening change in the controlling law."  *Orange St.*

25 *Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir.1999).  A motion for reconsideration cannot be used

26 to raise arguments or present evidence for the first time when they could reasonably have been

27 raised earlier in the litigation.  *Kona Enters.*, 229 F.3d at 890.

28    Plaintiff alleges nothing in his motion for reconsideration to indicate that the facts and

1   arguments he presents could not have been raised in his opposition to the motion to dismiss.

2   Furthermore, it would seem that his arguments fail as a matter of law.

3        In his motion for reconsideration, Plaintiff does not mention any of the cases cited by this

4   Court in the August 29 order except for *McGillicuddy v. Civil Serv. Comm'n,* 133 Cal. App. 782,

5   784 (Ct. App. 1933).  He does not contest the Court's interpretation of *McGillicuddy*, nor does he

6   discuss its application to the facts in his case in any depth.  He states only that he "always intended

7   to plead facts that would satisfy the standard set forth in *McGillicuddy* [citation omitted], and

8   thereby support a valid claim for a denial of due process based on Plaintiff's loss of property."  Pl.'s

9   Mot. for Reconsideration at 2.

10       In *McGillicuddy v. Civil Serv. Comm'n*, the court found that the plaintiffs were entitled to be

11  considered permanent civil service employees because the city charter then in effect did not permit

12  the hiring of temporary employees to their positions.  133 Cal. App. 782, 784 (Ct. App. 1933).  The

13  city charter provided that temporary employees could only be hired "to prevent the stoppage of

14  public business, or to meet extraordinary exigencies," and then could only be appointed for a

15  maximum of 60 days or until a regular civil service appointment could be made, whichever came

16  earlier.  *Id.*  There, the reason the reason that the employees were not properly classified as

17  temporary concerned the procedural requirements for appointment, not the substance of the work

18  that the employee was hired to perform.

19       Plaintiff makes no mention of  *Kreutzer v. City & County of San Francisco*, the key case

20  holding that employees may not challenge their temporary classification based solely on performing

21  out of class duties.  166 Cal. App. 4th 306 (Ct. App. 2008).  None of his arguments successfully

22  distinguish his situation from the plaintiff's in *Kreutzer*.  In that case, as here, the plaintiff was hired

23  specifically to perform the allegedly out of class duties.  *Id.* at 309-11.  The plaintiff in that case was

24  a physician who had been hired as the part-time medical director for a city-run clinic, and who

25  subsequently took other part-time positions as medical director for other city clinics.  *Id.* at 309-11.

26  He was hired as a Physician Specialist, and later promoted to a Senior Physician Specialist, both

27  positions exempt from the city's civil service system.  *Id.* at 310.  He did not go through the civil

28  service hiring process.  *Id.* at 309-11.  Some years later, the plaintiff was terminated, and he

**United States District Court**
For the Northern District of California

12

**United States District Court**

For the Northern District of California

1    subsequently brought suit for retaliatory discharge, and a violation of his due process rights. *Id.* at

2    312.  His due process claim was based on the argument that he had been misclassified as exempt

3    from the civil service system, and should be entitled to the protections of a civil service employee.

4           The plaintiff in *Kreutzer* had been appointed under a provision in the San Francisco City

5    Charter that provided that  "[t]he following positions shall be exempt from competitive civil service

6    selection, appointment and removal procedures, and the person serving in the position shall serve at

7    the pleasure of the appointing authority: ... physicians and dentists serving in their professional

8    capacity (except those physicians and dentists whose duties are significantly administrative or

9    supervisory)." 166 Cal. App. 4th at 313 (quoting San Francisco City Charter § 10.104).  The trial

10   court had found as a factual matter that the plaintiff's duties had been significantly administrative or

11   supervisory. *Id.*  Nevertheless, the appeals court found that the plaintiff was not entitled to the

12   protections of a civil service employee. *Id.* at 314-15.  It noted that "[i]t has been the law in

13   California, at least since 1938, that a fundamental principle of the civil service system is that

14   employees do not become entitled to occupy positions in classifications other than the ones to which

15   they were appointed merely by virtue of having been assigned duties that properly belong to a higher

16   classification, and that if the rule were otherwise, 'the entire fabric of the civil service system would

17   fail.'" *Id.* (quoting *Pinion v. State Personnel Board*, 29 Cal. App.2d 314, 319 (Ct. App. 1938)).

18          The *Kreutzer* court explicitly rejected the plaintiff's attempt to distinguish previous cases

19   where temporary employees had assumed out of class duties only after some period of employment.

20   *Id.* at 315-16.  The court held that "[t]he remedy for such misclassification [from the initial moment

21   of hire] is an application to the Commission for reclassification of the position, not a post hoc

22   decision by a court to grant civil service protection to an exempt employee who did not go through

23   the civil service hiring process before being appointed to the position." *Id.* at 316.

24          Like the plaintiff in *Kreutzer*, Plaintiff here was also appointed under § 10.104 of the San

25   Francisco City Charter, though in his case, the relevant subsection reads:

26              The following positions shall be exempt from competitive civil service
                selection, appointment and removal procedures, and the person serving
27              in the position shall serve at the pleasure of the appointing authority:
                        . . .
28              18.    Appointments, which shall not exceed three years and shall not

13

1
2
> be renewable, for special projects and professional services
> with limited term funding, except that such positions may be
> filled through regular civil service procedures.

3   Plaintiff argues that he did in fact comply with the civil service hiring requirements, and perhaps in

4   this sense his case may be distinguishable from *Kreutzer*.  This fact, however, is not out of step with

5   the temporary classification in which he was hired, which allows temporary employees to be hired

6   through the regular civil service procedures.  *See* August 29 Order at 25 (discussing this provision).

7   Though § 10.104 ¶ 18 allows temporary positions to be filled through regular civil service

8   procedures, § 10.104 also exempts such employees from the removal procedures associated with

9   civil service positions, and ¶ 18 contains no indication that temporary employees hired through the

10  civil service process acquire the removal protections of civil service employees.

11          Plaintiff argues that his appointment under this provision was unlawful because he had duties

12  beyond "special projects and professional services with limited term funding."  5AC ¶ 19.  In this

13  respect, however, Plaintiff's situation is indistinguishable from that of the plaintiff in *Kreutzer*.  In

14  both cases, the employee is arguing to be re-classified based on the fact that from the beginning of

15  his employment, he performed work outside the scope of the city charter provision under which he

16  was appointed.  *See Kreutzer*, 166 Cal. App. 4th at 313.

17          Finally, nothing in *Kreutzer* suggests that the fact that the employee was assigned out-of-

18  classification duties from the outset of the job or that such an assignment was part of a deliberate

19  plan by the employer changes the legal analysis of the due process claim.  In *Kreutzer*, the plaintiff

20  worked out of his class from the first day of employment, and it seems obvious that this was known

21  and intended by his employer.  Yet *Kreutzer* rejected plaintiff's due process claim.

22          Plaintiff offers nothing to successfully establish that he is entitled to a result different from

23  that of the plaintiff in *Kreutzer*.  As such, his motion for reconsideration fails on the merits.

24  ///

25  ///

26  ///

27  ///

28  ///

14

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's motion for reconsideration is **DENIED**.

This order disposes of Docket No. 56.


IT IS SO ORDERED.


Dated:  November 19, 2012

_____
EDWARD M. CHEN
United States District Judge

15