United States District Court
For the Northern District of California

1

2

3

4

5                          UNITED STATES DISTRICT COURT

6                          NORTHERN DISTRICT OF CALIFORNIA

7

8    PETER TURNER                                No. C-11-1427 EMC

9              Plaintiff,

10        v.                                     **ORDER GRANTING DEFENDANT'S
                                                 MOTION TO DISMISS, AND
11   CITY AND COUNTY OF SAN                       REMANDING PLAINTIFF'S FIRST
     FRANCISCO, *et al.*,                        CAUSE OF ACTION**

12                                               **(Docket No. 60)**
               Defendants.
13   _____/

14

15

16                          **I.    INTRODUCTION**

17        Pending before the Court is Defendants' motion to dismiss all seven causes of action in

18   Plaintiffs' Fifth Amended Complaint against Defendants City and County of San Francisco (CCSF),

19   San Francisco Department of Public Works (SFDPW), Ed Reiskin, and Bruce Storrs.  Having

20   reviewed Defendants' motion and all related papers submitted by the parties, the Court hereby

21   **GRANTS** Defendants' motion to dismiss Plaintiff's second through seventh causes of action,

22   dismissing these causes of action with prejudice, and **REMANDS** Plaintiff's first cause of action

23   based on California's taxpayer standing statute for determination in state court.

24        **II.    FACTUAL AND PROCEDURAL BACKGROUND**

25        Plaintiff brings suit against the City and County of San Francisco (CCSF), the San Francisco

26   Department of Public Works (DPW), Ed Reiskin, and Bruce Storrs alleging violations of California

27   state law and the United States Constitution in connection with his employment at SFDPW.  On

28

**United States District Court**
For the Northern District of California

1  October 15, 2012, Defendants moved to dismiss Plaintiff's Fifth Amended Complaint (FAC).

2  Docket No. 60.

3  A.    Facts Alleged

4      Plaintiff began applying for a position with DPW in 2003.  FAC, Docket No. 55, ¶ 8.  He

5  applied for three positions with CCSF: (1) survey assistant or "5310," (2) survey assistant 2 or

6  "5312"; and (3) survey associate or "5314."  *Id.* ¶ 8.  Plaintiff alleges he was qualified for each

7  position but never hired.  He subsequently applied for a 5312 position with the Millbrae office of the

8  San Francisco Public Utilities Commission in 2005, for which he was also qualified but not hired.

9  *Id.* ¶ 9.  He again applied for two 5310 positions in 2006 with DPW, for which he was not hired.  *Id.*

10  ¶¶ 10-11.  Instead, less qualified people favored by Defendant Bruce Storrs, a manager at DPW,

11  received the positions.  *Id.* ¶¶ 10-11.

12      Another 5310 position opened up in early 2007, for which Plaintiff again applied.  *Id.* ¶ 13.

13  Plaintiff interviewed for the position and took the civil service exams for all three survey positions.

14  *Id.* ¶¶ 13-14.  Plaintiff received the highest score on all three exams.  *Id.* ¶ 14.  Plaintiff was hired for

15  a survey assistant position.  *Id.* ¶ 15.

16      On June 19, 2007, Plaintiff began work as a survey assistant.  *Id.* ¶ 16.  However, he was not

17  informed that he had been hired as a temporary exempt employee, rather than in a permanent civil

18  service position, until the day he started work.  *Id.* ¶ 17.  He had interviewed and tested for a

19  permanent position.  *Id.*  Five others were also hired as temporary exempt employees.  *Id.* ¶ 18.

20  Plaintiff argues it was illegal to hire him and others as temporary exempt employees because Section

21  10.104 of the City Charter only authorizes the hiring of temporary employees for special projects or

22  professional services with limited funding.  *Id.* ¶ 19.  In contrast, Plaintiff worked on all department

23  tasks, which were neither special projects nor professional services with limited funding.  *Id.*

24      Plaintiff further alleges that he worked out of class from the first day of his employment and

25  was given extra responsibility not commensurate with his low pay and temporary status.  *Id.* ¶¶ 23-

26  24.  Plaintiff's high level of responsibility did not comport with Defendant Storrs's representations

27  to other employees about Plaintiff's role, yet Mr. Storrs refused to officially promote Plaintiff.  *Id.*

28  ¶¶ 24-25.  Beyond working Plaintiff out of class, Mr. Storrs and Robert Hanley, the SFDPW Chief

2

United States District Court

For the Northern District of California

1   Surveyor in charge of office operations, also attempted to force Plaintiff to sign off on maps and

2   surveys he had not seen, and Mr. Hanley falsely signed maps based on surveys Plaintiff had done.

3   *Id.* ¶¶ 6, 26.

4          Nevertheless, Plaintiff continued to attempt to obtain a promotion and permanent status.

5   Later in 2007, three survey associate positions opened up, but Plaintiff was told not to apply for

6   them because Mr. Storrs had already selected people for them.  *Id.* ¶ 22.  All three new hires were

7   for permanent positions, although two of them were less qualified than Plaintiff and the third tested

8   lower than Plaintiff.  *Id.*

9          DPW's use of temporary exempt employees and failure to use objective criteria to hire

10  permanent employees resulted in negligent surveying work.  *Id.* ¶¶ 28-29.  Plaintiff alleges that the

11  temporary exempt hiring practices were part of a larger scheme, through which DPW underbid on

12  survey work in order to "corner the market" and made up the money by overcharging the public for

13  "mapping fund fees."  *Id.* ¶¶ 30-32.  Mr. Storrs acknowledged that this set-up "made the department

14  money."  *Id.* ¶ 32.  Plaintiff alleges it was illegal to use mapping fund fees to offset the cost of low

15  survey bids.  *Id.* ¶ 31.

16         Plaintiff "began speaking out against" he and others being used as temporary exempt

17  employees in violation of civil service rules "at staff meetings; at union meetings; and in face-to-

18  face meetings with Mr. Storrs and DPW and Human Resources officials."  *Id.* ¶ 37.  In addition, he

19  "repeatedly raised the fact that he and other temporary exempts were working out of class on a

20  regular basis."  *Id.*  Mr. Storrs and other DPW officials knew of Plaintiff's concerns.  *Id.*

21         At some point, "Plaintiff was assigned to map checking, a position Storrs openly

22  acknowledged he used to punish individuals who did not 'follow instructions.'"  *Id.* ¶ 46.  Plaintiff

23  alleges further that in 2009, the Human Resources Department sabotaged Plaintiff's efforts to apply

24  for survey work at the airport.  *Id.* ¶ 47.  In response, "he wrote to the Human Resources agent

25  handling the position and told her that he planned to expose these policies and report them to

26  whatever authority would hold them responsible."  *Id.* ¶ 48.

27         In the aftermath of this letter, Plaintiff was summoned to a meeting with Human Resources

28  agent Tammy Wong, Mr. Storrs's supervisor Barbara Moy, and Mr. Storrs, in which he was "asked

hostile and intimidating questions by Storrs." *Id.* ¶ 49. Plaintiff again voiced his concerns about Defendants' unlawful practices in the meeting. *Id.* ¶ 51. Immediately after the meeting, Mr. Storrs informed Plaintiff he would be fired. *Id.* ¶ 52. DPW Director Reiskin sent Plaintiff a letter the next day confirming his termination. *Id.* After he was fired, DPW refused to provide Plaintiff with information about continuing health insurance and available coverage. *Id.* ¶ 56.

Following his termination, Plaintiff continued to inquire about posted survey positions with the City, but Mr. Storrs was permitted to select his choices "without regard to objective standards." *Id.* ¶¶ 57-60. Doris Urbina, the personnel analyst for these positions, "ignored the content of" an application Plaintiff submitted and informed him that his application had been rejected. *Id.* ¶ 59.

Plaintiff further alleges that, as of June 2010, five temporary exempt employees working for DPW were rendered permanent employees when their employment continued after their temporary exempt tenure expired. *Id.* ¶ 61. Plaintiff alleges this practice violated Rule 18 of Article 10 of the City Charter. *Id.* They were hired as temporary exempt employees "to allow for vetting and subjective selection of employees in violation of the City Charter." *Id.*

Plaintiff alleges that, since being terminated, he has been unable to obtain work due to his reputation being tarnished. *Id.* ¶ 63. Storrs and others have been contacted on multiple occasions to provide references for Plaintiff and have deliberately put forth a false and negative reputation for Plaintiff based on the vocal complaints he made regarding allegedly illegal hiring practices. *Id.* Recently, Jonathan Chow from the San Francisco Public Utilities Commission contacted Storrs to discuss Plaintiff's candidacy for a position. *See id.* Prior to this contact, Chow had told Plaintiff that he was the most qualified applicant for the position, but he ultimately denied Plaintiff's application after this conversation. *Id.* Plaintiff alleges that he has been effectively blacklisted from obtaining future work within his chosen profession. *Id.*

B.    Procedural History

Plaintiff filed his initial complaint in this matter in San Francisco Superior Court on December 22, 2010 alleging numerous state law causes of action. *See* Notice of Removal, Docket No. 1, Ex. A. Subsequently, Plaintiff filed a First Amended Complaint adding causes of action arising under federal law, as well as additional state law causes of action. *See id.* Ex. F. Following

United States District Court

For the Northern District of California

4

this amendment, Defendants removed the case to this Court on March 24, 2011.  *See* Notice of Removal, Docket No. 1.

   After removal, Plaintiff filed a Second Amended Complaint in this Court on July 18, 2011, a Third Amended Complaint on May 7, 2012 and a Fourth Amended Complaint on June 27, 2012. *See* Second Amended Compl., Docket No. 14; Third Amended Compl., Docket No. 32; Fourth Amended Compl., Docket No. 40.  Defendants moved to dismiss Plaintiff's Fourth Amended Complaint on July 6, 2012, which resulted in this Court's order of August 29, 2012 granting in part and denying in part Defendants' motion to dismiss.  *See* Docket Nos. 42, 49.

   Plaintiff filed his Fifth Amended Complaint, the subject of the current motion to dismiss, on September 28, 2012.  *See* Docket No. 55.  Plaintiff's seven remaining causes of action, as pled in his Fifth Amended Complaint, include (1) illegal and wasteful expenditure of funds pursuant to California Code of Civil Procedure section 526a; (2) violation of California Labor Code sections 98.6 and 1102.5(c); (3) adverse employment actions in violation of California False Claims Act sections 12653(b) and 12653(d)(2); (4) relief under the Fifth Amendment of the United States Constitution; (5) retaliation in violation of California Labor Code section 1102.5; (6) deprivation of liberty and property without due process of law pursuant to 42 U.S.C. § 1983; and (7) retaliation in violation of the First Amendment pursuant to Title 42 U.S.C. § 1983.  FAC, Docket No. 55, ¶¶ 65-94.

### III.   DISCUSSION

A.   Legal Standard

   Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted.  *See* Fed. R. Civ. P. 12(b)(6).  A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged.  *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  While "a complaint need not contain detailed factual allegations . . . it must plead enough

5

United States District Court

For the Northern District of California

1    facts to state a claim to relief that is plausible on its face." *Id.* (quotation marks and citation

2    omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

3    court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

4    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556

5    (2007).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more

6    than sheer possibility that a defendant acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

7    (2009).

8    B.    Code of Civil Procedure Section 526a (First Cause of Action)

9          Plaintiff's first cause of action is a claim for illegal and wasteful expenditure of funds

10   pursuant to California Code of Civil Procedure section 526a, brought in Plaintiff's capacity as a

11   taxpayer.  FAC, Docket No. 55, ¶¶ 65-71.

12         1.    Legal Standard

13         With respect to claims brought under section 526a, "a party seeking to commence suit in

14   federal court must meet the stricter federal standing requirements of Article III."  *Cantrell v. City of

15   Long Beach*, 241 F.3d 674, 683 (9th Cir. 2001).  To meet Article III standing requirements, "the

16   plaintiff must allege a direct injury caused by the expenditure of tax dollars" and the injury must be

17   "fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the

18   requested relief."  *Daimler Chrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006).  "[T]he mere fact that

19   a plaintiff is a taxpayer is not generally deemed sufficient to establish standing in federal court."

20   *Arizona Christian School Tuition Organization v. Winn*, 131 S. Ct. 1436, 1440 (2011); *see also Hein

21   v. Freedom from Religion Foundation, Inc.*, 551 U.S. 587, 593 (2007) (plurality opinion).  When

22   pursuing a taxpayer suit against a municipality, a plaintiff must, as held in *Doremus v. Board of

23   Education of Borough of Hawthorne*, 342 U.S. 429, 434 (1952), demonstrate "that he has sustained

24   or is immediately in danger of sustaining some direct injury as a result of the challenged statute's

25   enforcement."  *Cammack v. Waihee*, 932 F.2d 765, 770 (9th Cir. 1991) (alterations and quotation

26   marks omitted) (citing *Doremus*); *see also Barnes-Wallace v. City of San Diego*, 530 F.3d 776, 786

27   (9th Cir. 2008) (applying *Doremus* test to municipal action).  In order to state a claim for municipal

28   taxpayer standing, "the pleadings of a valid taxpayer suit must 'set forth the relationship between

United States District Court
For the Northern District of California

1    taxpayer, tax dollars, and the allegedly illegal government activity.'" *See Cantrell v. City of Long*

2    *Beach*, 241 F.3d 674, 683 (9th Cir. 2001) (quoting *Hoohuli v. Ariyoshi*, 741 F.2d 1169, 1178 (9th

3    Cir.1984)).

4         2.   <u>Application</u>

5        Plaintiff claims to have suffered a "pocket book" injury, asserting that Defendants are

6    spending tax dollars on their illegal scheme of underbidding on agency work in which they

7    employed Plaintiff out of class as a temporary exempt employee. Pl.'s Resp., Docket No. 66, at 5.

8    Plaintiff claims that he suffered a direct injury because he was underpaid and denied the protections

9    that should have been afforded him if he were properly classified as a permanent employee. *Id.*

10   Plaintiff claims that he was hired as a temporary exempt employee in order for Defendants to

11   circumvent budgetary limitations that prevented them from hiring permanent employees. *Id.*

12   Further, Plaintiff claims that this hiring scheme provides a connection between the city's illegal

13   actions and his being hired as a temporary exempt employee. *Id.* Even if Plaintiff has not pled

14   sufficient facts to demonstrate a direct injury, he claims that this Court would still retain ancillary

15   jurisdiction over the section 526a claim because of the other federal claims at issue in this case. *Id.*

16   at 6 (citing *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 174 (1997)). Furthermore,

17   even if Plaintiff lacks standing, he argues that this Court should remand this cause of action to

18   superior court instead of dismissing it. *Id.* at 7 (citing *Greenberger v. S.F. Police Dept.* 2001 U.S.

19   Dist. LEXIS 128338, at *5-6 (N.D. Cal. 2001)).

20       Plaintiff's complaint suffers a fatal flaw with respect to this cause of action: Plaintiff never

21   alleges that his taxes paid for the allegedly illegal and wasteful scheme. Plaintiff simply alleges that

22   he "is a taxpayer and has paid state and local taxes in the past year." FAC, Docket No. 55, ¶ 66. He

23   never alleges that his taxes paid for this scheme, nor does it necessarily follow that they do. For one,

24   the DPW is a local government entity for the City and County of San Francisco. In order for his

25   local taxes to have paid for this scheme, he would need to have paid taxes to the City and County of

26   San Francisco. Plaintiff does not allege this fact. Without alleging this fact, Plaintiff cannot

27   demonstrate any relationship between him in his capacity as a taxpayer, his tax dollars, and the

28   alleged unlawful activity. *See Cantrell*, 241 F.3d at 683.

United States District Court

For the Northern District of California

1    Even if Plaintiff were to allege that he paid taxes to the City and County of San Francisco, he

2    would need to demonstrate a plausible connection between his taxes and the allegedly unlawful

3    activity.  Plaintiff's sole allegation suggesting that Defendants' scheme constituted a "pocketbook"

4    injury in his capacity as a taxpayer is that "[i]nstead of saving money by being able to underbid for

5    map survey projects, the SFDPW ultimately wasted more public funds through the unauthorized

6    hiring of additional temporary exempt employees."  FAC, Docket No. 55, ¶ 34.  This allegation does

7    not meet the requirements for municipal taxpayer standing.  To establish taxpayer standing, the

8    plaintiff must "allege that the government spent specific amounts of tax dollars on the challenged

9    conduct."  *Cantrell*, 241 F.3d at 683.  In *Cantrell*, the court denied standing where the complaint

10   "merely contain[ed] conclusory statements regarding waste of taxpayer monies, [and] often

11   indiscriminately lump[ed] together allegations regarding waste of funds."  The FAC fails to identify

12   specific tax dollars expended by the City caused by the challenged penalties herein.  As this Court

13   previously noted, it appears the hiring practices at issue may have saved the City money rather than

14   causing additional expenditures.  While Plaintiff does allege that the City spent $35,000 on a

15   contract for unlawful mapping fees, (FAC ¶ 33) he fails to allege the City as a whole spent more

16   money than it would have absent the alleged unlawful scheme; indeed, the moneys spent on

17   mapping fees by some departments were paid to the DPW.  Plaintiff has failed to establish federal

18   taxpayer standing.  *See Doremus v. Board of Education*, 342 U.S. 429, 433-34 (1952) (no taxpayer

19   standing where no showing that challenged activity added to operational costs resulting in a tax

20   increase).

21   Accordingly, this claim is dismissed for lack of federal standing.  This dismissal does not

22   adjudicate whether Plaintiff has standing to pursue a claim under CCP § 526a in state court.

23   C.    Fifth Amendment to the U.S. Constitution (Fourth Cause of Action)

24   Plaintiff's fourth cause of action is for relief under the Fifth Amendment to the United States

25   Constitution.  FAC, Docket No. 55, ¶ ¶ 78-83.  In its order granting in part and denying in part

26   Defendants' previous motion to dismiss, the Court already discussed how Fifth Amendment due

27   process claims do not apply to states and municipalities, but rather the federal government, and

28   pointed out that Plaintiff's then seventh (now sixth) cause of action already raised a due process

**United States District Court**
For the Northern District of California

1   cause of action under the Fourteenth Amendment.  Order, Docket No. 49, at 21-22; *see also Bingue*

2   *v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008).  Yet, Plaintiff's Fifth Amended Complaint still

3   requests relief under the Fifth Amendment.  FAC, Docket No. 55, ¶ 78-83.  Thus, the Court

4   **GRANTS** Defendants' motion to dismiss Plaintiff's fourth cause of action.

5   D.      Due Process (Sixth Cause of Action)

6           In his sixth cause of action, Plaintiff alleges deprivation of property and liberty interests

7   pursuant to 42 U.S.C. § 1983.  FAC, Docket No. 55, ¶¶ 87-90.  The Court has *already* dismissed

8   Plaintiff's property interest claim with prejudice.  Order, Docket No. 49, at 27.  Thus, it need not

9   revisit the property interest aspect of this cause of action.

10          Plaintiff bases his claim that he was deprived of a cognizable liberty interest on Defendants'

11  "precluding plaintiff from obtaining work in his chosen profession, and . . . stigmatizing plaintiff

12  through disclosure of the purported reasons for his dismissal."  FAC, Docket No. 55, ¶ 88.  In his

13  opposition brief to the current motion to dismiss, Plaintiff clarifies that the liberty interest he seeks

14  to invoke is that defined by the "stigma plus" doctrine, which essentially governs constitutional

15  defamation claims.  *See Paul v. Davis*, 424 U.S. 693 (1976).  Under that standard, to establish a

16  deprivation of liberty, a plaintiff must show the public disclosure of a stigmatizing statement by the

17  government, plus the denial of "some more tangible interest[] such as employment," or the alteration

18  of a right or status recognized by state law.  *Paul*, 424 U.S. at 701, 711.  A defendant's remarks in

19  connection with discharge from employment must contain egregious accusations such as "charges of

20  immorality, or dishonesty that can cripple an individual's ability to earn a living."  *Hyland v.*

21  *Wonder*, 972 F.2d 1129, 1142 (9th Cir. 1992).  Those remarks must be "substantially false."

22  *Campanelli*, 100 F.3d at 1484.  If the tangible interest deprived is public employment, the

23  stigmatizing statement must occur in conjunction with the termination of employment.  *See Siegert*

24  *v. Gilley*, 500 U.S. 226, 234 (1991).  In the Ninth Circuit, one key inquiry is whether "defamatory

25  statements are so closely related to discharge from employment that the discharge itself may become

26  stigmatizing in the public eye."  *Campanelli v. Bockrath*, 100 F.3d 1476, 1482 (9th Cir. 1996).

27  While "there must be some temporal nexus between the employer's statements and the termination,"

28

a delay of seven to nine days does not necessarily preclude a finding that defamatory statements are sufficiently close to the discharge. *Id.* at 1483.

Plaintiff argues that, due to the reputational harm that has occurred as a result of his termination, he has been unable to get a new job in his chosen profession. However, to support his argument, Plaintiff only alleges that after his termination, "a number of private individuals have informed Plaintiff that Mr. Storrs had said that Plaintiff was fired for being a troublemaker and for speaking out against illegal hiring practices" and that "Storrs and other individuals have been contacted on multiple occasions to either provide references for Plaintiff or to provide casual assessments of Plaintiff's employability or qualifications and have deliberately impu[t]ed a false and negative reputation for Plaintiff based on the vocal complaints Plaintiff made regarding the illegal hiring practices." FAC, Docket No. 55, ¶¶ 55, 63. The only specific conversation he can point to is when Jonathan Chow of the San Francisco Public Utilities Commission, who had previously acknowledged that Plaintiff was the most qualified applicant for a job, contacted Storrs regarding Plaintiff's application. *Id.*

Plaintiff's argument has several problems. First, his assertion that he has not been able to obtain a new job due to Defendants' statements about him is entirely conclusory; he does not allege any specific facts regarding false statements made by Defendants. At most, he alleges Defendants called Plaintiff a "troublemaker" and "impu[ted] a false and negative reputation for Plaintiff." Apart from being conclusory, these comments were not sufficiently damning to create a stigma-plus claim. By way of comparison, in *Gray v. Union County Intermediate Education District*, 520 F.2d 803, 806 (9th Cir. 1975), the Ninth Circuit held that a letter charging the employee with "insubordination, incompetence, hostility toward authority, and aggressive behavior" did not "import serious character defects such as dishonesty or immorality" and thus did not result in a deprivation of liberty without due process of law. *See* FAC, Docket No. 55, ¶¶ 55, 63.

Second, if Defendants' statements about Plaintiff were to qualify as defamatory under the "stigma plus" doctrine, Plaintiff has not alleged sufficient facts establishing they were made in conjunction with his termination; he has not alleged a sufficient "temporal nexus" as required by *Campanelli*. The only specific defamatory conversation Plaintiff alleges in his complaint, that

**United States District Court**
For the Northern District of California

1   between Defendant Storrs and Jonathan Chow of the San Francisco Public Utilities Commission,

2   took place "[r]ecently" as of the date of his Fifth Amended Complaint, September 28, 2012.  *See*

3   FAC, Docket No. 55, ¶ 63.  However, Plaintiff was terminated on or around June 10, 2009, over

4   three years before this complaint.  *See id.* ¶ 53.  Thus, there is not the sort of temporal nexus

5   required by *Campanelli* to suggest that the defamation occurred in conjunction with Plaintiff's

6   termination, providing further grounds for granting Defendants' motion to dismiss Plaintiff's sixth

7   cause of action for deprivation of liberty without due process of law.

8          The Court therefore **GRANTS** Defendants' motion to dismiss Plaintiff's sixth cause of

9   action.

10   E.      First Amendment Retaliation (Seventh Cause of Action)

11          1.      Statement of Law

12          To bring a cause of action for retaliation for engaging in protected speech in violation of the

13   First Amendment, Plaintiff must show: (1) he engaged in protected speech; (2) he suffered an

14   adverse employment action; and (3) his speech was a substantial motivating factor for the adverse

15   employment action.  *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003).  For a public

16   employee, the threshold issue, which is a question of law, is to determine whether the employee

17   spoke as a citizen on a matter of "public concern."  *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006);

18   *Connick v. Myers*, 461 U.S. 138, 148, n. 7 (1983).  In *Connick*, the Supreme Court, in requiring that

19   public employee speech be regarding a matter of "public concern" in order to obtain protection

20   under the First Amendment, held that "[w]hether an employee's speech addresses a matter of public

21   concern must be determined by the content, form, and context of a given statement . . . ."  461 U.S.

22   at 147-48.  This determination is a question of law.  *Lambert v. Richard*, 59 F.3d 134, 136 (9th Cir.

23   1995).

24          Subsequent cases elucidate the "content, form, and context" analysis mandated by *Connick*

25   can play out.  First, in *Lambert v. Richard* the Ninth Circuit held that a librarian's statement to the

26   city council at a televised city council meeting "that the library was 'barely' functioning and that

27   employees who dealt regularly with the public were performing 'devoid of zest, with leaden hearts

28   and wooden hands'" qualified as protected speech under *Connick*.  59 F.3d at 136-37.  The court

United States District Court

For the Northern District of California

1   emphasized "that [the plaintiff] spoke as a union representative, not as an individual, and . . .

2   described departmental problems, not private grievances." *Id.* at 137.  In addition, it emphasized

3   that the plaintiff's criticisms, which related to the Library Department Director, were already an

4   issue of public concern by the time the plaintiff voiced her criticisms, as the librarians' union and its

5   members had protested to city management regarding the Director's conduct, including "'assertions

6   that [the Director] mismanaged the library department and treated employees in an abusive and

7   intimidating manner, and that [the Director's] conduct was having an adverse effect on service to the

8   public.'" *Id.* at 136.  Furthermore,  the statement was made in a public meeting to a governing

9   political body.

10          In contrast to *Lambert*, the Ninth Circuit later held in *Descrochers v. City of San Bernardino*,

11   572 F.3d 703, 705 (9th Cir. 2009), that an informal grievance stating "that 'there was an ongoing

12   and continuing issue relative to a difference of personalities between the [grievants and their

13   supervisor]'" did not qualify as a matter of "public concern" under *Connick*.  The *Descrochers* court

14   considered separately the content, form, and context of this complaint.  *Id.* at 710-17.  With respect

15   to content, it held that content "must involve issues about which information is needed or

16   appropriate to enable the members of society to make informed decisions about the operation of

17   their government" to be protected, but "speech that deals with individual personnel disputes and

18   grievances and that would be of no relevance to the public's evaluation of the performance of

19   governmental agencies is generally not of public concern." *Id.* at 710 (internal quotation marks and

20   citations omitted).  For example, "the fact that speech contains passing references to public safety,

21   incidental to the message conveyed weighs against a finding of public concern." *Id.* (internal

22   quotation marks, alterations, and citations omitted).  Ultimately, the court held that "the plain

23   language of the grievances . . . indicates that [the plaintiffs] were involved in a personality dispute

24   centered on [their supervisor's] management style," and thus "relate[d] at best only tangentially to

25   matters of public concern . . . ." *Id.* at 711-14.

26          With respect to form, "[t]he fact that the speech took the form of an internal employee

27   grievance means that the public was never made aware of [the plaintiffs'] concerns," noting that

28   "'[a] limited audience weigh[s] against [a] claim of protected speech.'" *Id.* at 714 (quoting *Roe v.*

*City & County of San Francisco*, 109 F.3d 578, 585 (9th Cir. 1997)). "'Private speech motivated by an office grievance is less likely to convey the information that is a prerequisite for an informed electorate.'" *Id.* (quoting *Weeks v. Bayer*, 246 F.3d 1231, 1235 (9th Cir. 2001)).

Lastly, with respect to context, the court looked to "'the *point* of the speech'" to determine that it "reflect[ed] two employees' dissatisfaction with their employment situation, a conclusion which weighs against a finding of public concern." *Id.* at 715-17 (emphasis in original) (quoting *Roth v. Veteran's Admin.*, 856 F.2d 1401, 1405 (9th Cir. 1988)). It posited two questions for determining the context of the speech: "[W]hy did the employee speak (as best as we can tell)? Does the speech 'seek to bring to light actual or potential wrongdoing or breach of public trust,' or is it animated instead by 'dissatisfaction' with one's employment situation?" *Id.* at 715 (quoting *Connick*, 461 U.S. at 148). In its analysis of the context prong of the *Connick* analysis, the Ninth Circuit distinguished the facts in *Lambert*, in which the subject complained about was a subject of public discussion. *Id.* at 717. It noted that "[t]here is a marked distinction between speech motivated by personal differences and circulated to a few colleagues, and speech before a city council on a matter in the public eye." *Id.*

2. <u>Application</u>

Here, Plaintiff argues that his comments were a matter of public concern because "he spoke out against Defendants' practice of using temporary exempt employees in violation of civil service rules," which "is undeniably a matter of political, social, or other concern to the community." Pl.'s Opp'n, Docket No. 66, at 14:25-15:3. In his Fifth Amended Complaint, Plaintiff specifically alleges that he spoke out "that he and others were being used as 'temporary exempt employees' in violation of civil service rules . . . . at staff meetings; at union meetings; and in face-to-face meetings with Mr.

///
///
///
///
///
///

13

Storrs and DPW and Human Resources officials." FAC, Docket No. 55, ¶ 37.[1] Plaintiff does not allege that he spoke out about excessive mapping fees or negligent survey work.

Although the content of this complaint ostensibly could invoke a matter of public concern, as it discusses civil service rules prescribed by local law, for the reasons discussed below, Plaintiff's voiced complaint was focused on and driven by his internal grievance. Simply invoking civil service rules does not necessarily bestow upon a statement the status of being about a matter of public concern. *See Cooper v. Cape May County Bd. of Soc. Servs.*, 175 F. Supp. 2d 732, 745 (D.N.J. 2001) (complaints invoking civil service rules revolved around a personal dispute and were only tangentially related to civil service); *see also Phares v. Gustafson*, 856 F.2d 1003, 1009 (7th Cir. 1988) (determining that the plaintiff's argument that taxpayers "are interested in whether civil service jobs are classified correctly, whether civil service employees receive all their accrued vacation time, and whether civil service employees are harassed by their supervisors. . . . would make every personnel dispute within a public institution a matter of first amendment concern").

The FAC describes his objections as arising out of his personal dissatisfaction in not being given a permanent position. It does not allege that Plaintiff raised general public policy concerns that transcended his employment grievances (or that of a few other temporary employees hired with him). *Cf. Zamboni v. Stamler*, 847 F.2d 73, 78 (3d Cir. 1988) (finding it relevant in holding speech to constitute a matter of public concern that, in the plaintiff's protected speech, "[he] referred to the policy issue as well as to his personal complaint"). Only now, after Plaintiff was fired, has he come up with post hoc policy rationales for why the alleged civil service rule violation might constitute a matter of public concern, rationales he did not articulate at the time of his allegedly protected comments. *See* FAC, Docket No. 55, ¶¶ 28-36.

---

[1] Plaintiff's Fifth Amended Complaint also contains the allegation that "[a]fter Plaintiff discovered that Storrs and/or his agents had again acted to prevent his ability to advance or otherwise become a permanent employee, he wrote to the Human Resources agent handling the position and told her that he planned to expose these policies and report them to whatever authority would hold them responsible." FAC, Docket No. 55, ¶ 48. Plaintiff does not argue in his brief that this complaint is entitled to First Amendment protection as to this communication, but even if he did it would not qualify, as its content is purely about Plaintiff's own advancement as an employee, its form is in an internal complaint to Human Resources, and its context indicates that Plaintiff was animated by dissatisfaction with his own position.

1    Moreover, both the form and context of his comments weigh strongly suggest Plaintiff did

2  not engage in protected speech.  Unlike the plaintiff in *Lambert* and like the plaintiffs in

3  *Descrochers*, the form of the complaint was entirely internal, consisting of Plaintiff speaking out "at

4  staff meetings; at union meetings; and in face-to-face meetings with Mr. Storrs and DPW and

5  Human Resources officials."  FAC, Docket No. 55, ¶ 37.  If he was truly concerned with the

6  implications of this scheme to the public, Plaintiff could have pursued a complaint with the San

7  Francisco Civil Service Commission, gone to the Board of Supervisors for the City and County of

8  San Francisco, gone to the press, or otherwise attempt to air his concerns in a public forum, yet he

9  did not do so.  *See Zamboni*, 847 F.2d at 78 (finding it relevant that the plaintiff complained to state

10  civil service commission and sued in state court because he directed his comments "to the

11  appropriate officials who were in a position to redress the actions . . . that [the plaintiff]

12  challenged.").

13    The context, or "the point," of this complaint was clearly in furtherance of Plaintiff's

14  asserted employment rights, as his alleged comments were squarely situated within and arose out of

15  Plaintiff's ongoing dispute with Defendants about his own misclassification.  There is no claim that

16  he sought to have the union take broad-based action; nor does he allege he sought to organize other

17  affected employees in seeking broader relief for others when he raised his comments at various

18  meetings.  *See* FAC ¶¶ 37-38.

19    In sum, all three *Connick* factors weigh against Plaintiff's speech deserving protection under

20  the First Amendment.  Thus, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's seventh

21  cause of action.

22  F.    Dismissal with Prejudice/Retention of Supplemental Jurisdiction/Remand

23    The Court recognizes that it should freely give leave to amend "when justice so requires."

24  Fed. R. Civ. P. 15(a)(2).  Here, however, Plaintiff is already on his Fifth Amended Complaint nearly

25  two years after initiation of this action.  Plaintiff has been repeatedly unable to present a legally

26  sound theory for why he is entitled to relief under any of the federal claims asserted.  Instead, he

27  simply rehashed many of the same theories before this Court.  At a certain point, the Court must fish

28  or cut bait.  After this many attempts, the Court concludes it is appropriate to dismiss Plaintiff's

**United States District Court**
For the Northern District of California

1  fourth, sixth and seventh causes of action with prejudice.  The first cause of action is dismissed for

2  lack of federal standing.

3        Having dismissed all of Plaintiff's federal claims, the Court must determined whether to

4  continue to exercise supplemental jurisdiction over Plaintiff's remaining state law causes of action.

5  A court may decline to exercise supplemental jurisdiction over state law claims if  "the district court

6  has dismissed all claims over which it has original jurisdiction . . . ."  28 U.S.C. § 1367(c); *Executive*

7  *Software N. Am., Inc. v. U.S. Dist. Ct. for C.D. Cal. (Page)*, 24 F.3d 1545, 1555-56 (9th Cir. 1994),

8  *overruled on other grounds by Cal. Dept. of Water Resources v. Powerex Corp.*, 533 F.3d 1087 (9th

9  Cir. 2008).  If a case falls within 28 U.S.C. § 1367(c)(3), the court's exercise of discretion to

10  determine whether to continue exercising supplemental jurisdiction is guided by consideration of a

11  balance of the factors of "'judicial economy, convenience, fairness, and comity' . . . ."  *See Oliver v.*

12  *Ralphs Grocery Co.*, 654 F.3d 903, 911 (9th Cir. 2011) (quoting *Carnegie-Mellon Univ. v. Cohill*,

13  484 U.S. 343, 350 n.7 (1988)).  For example, two situations in which courts have continued

14  exercising supplemental jurisdiction after dismissing all federal claims are if the court has already

15  invested substantial judicial resources in the supplemental claims and if resolution of the

16  supplemental claims on the merits is obvious.  *See Dargis v. Sheehan*, 526 F.3d 981, 990 (7th Cir.

17  2008).

18        If the court decides not to continue exercising supplemental jurisdiction, it may remand the

19  case to state court pursuant to 28 U.S.C. § 1447(c), which provides that "[i]f at any time before final

20  judgment it appears that the district court lacks subject matter jurisdiction, the case shall be

21  remanded."  *See also Borreani v. Kaiser Foundation Hospitals*, 2012 WL 2375323, at *3 (N.D. Cal.

22  June 22, 2012) (remanding case *sua sponte* after denying defendant's federal preemption defense of

23  plaintiffs' solely state law claims on motion to dismiss).

24        In light of these jurisdictional issues, the Court turns to each of Plaintiff's remaining state

25  law claims.

26  G.    <u>Violation of Labor Code Sections 98.6 and 1102.5(c) (Second Cause of Action)</u>

27        Plaintiff's second cause of action asserts that Plaintiff was terminated in retaliation for

28  refusing to participate in unlawful activity.  (FAC ¶ 73.)  Plaintiff has not alleged any facts

United States District Court

For the Northern District of California

1    demonstrating that he refused to take part in unlawful activity.  Nor does Plaintiff argue in his brief

2    that he was terminated for refusal to take part in unlawful activity.  *See* Pl.'s Opp'n, Docket No. 66,

3    at 7:6-26.  Rather, Plaintiff argues that he was terminated for complaining about unlawful activity,

4    which is addressed not properly by the second cause of action but if anything by his fifth cause of

5    action.  *See id.*  Plaintiff's second cause of action is futile.  Declining to exercise jurisdiction over

6    this cause of action would serve no purpose, as a state court would have to waste judicial resources

7    to reach the same obvious conclusion.

8          Thus, the Court **GRANTS** Defendant's motion to dismiss with prejudice Plaintiff's second

9    cause of action for retaliation for refusal to participate in unlawful activity.

10   H.      False Claims Act Retaliation (Third Cause of Action)

11         Plaintiff's third cause of action, which cites the California False Claims Act (CFCA) as

12   found at Government Code sections 12653(b) and 12653(d)(2), asserts that Plaintiff was terminated

13   for refusing to participate in, attempting to prevent, and attempting to expose unlawful acts under the

14   FCA.  FAC, Docket No. 55, ¶ 75-77.  Section 12653(d)(2) does not state a cause of action, but rather

15   is one of two prerequisites for a cause of action under section 12653(d), which arises when an

16   employer retaliates against an employee for "participation in conduct which directly or indirectly

17   resulted in a false claim being submitted to the state . . . ."  Plaintiff has not alleged any facts

18   suggesting that a false claim was ever submitted to the state or that he was retaliated against for

19   conduct resulting in a false claim being submitted.  Thus, Plaintiff's citation to section 12653(d)(2)

20   appears to have been in error.

21         On the other hand, section 12653(b) prohibits retaliation against an employee for "disclosing

22   information to a government . . . agency" regarding a false claim.  Plaintiff's complaint and

23   argument in opposition to Defendants' motion to dismiss make clear this section is the thrust of his

24   third cause of action.

25         To prove a claim for False Claims Act retaliation under section 12653(b), a plaintiff must

26   demonstrate that (1) he engaged in protected activity; (2) the employer knew he engaged in

27   protected activity; and (3) the employer discriminated against him for participating in protected

28   activity.  *Mendiondo v. Centinela Hosp. Medical Center*, 521 F.3d 1097, 1103-04 (9th Cir. 2008)

United States District Court
For the Northern District of California

1  (discussing federal False Claims Act); *see also Kaye v. Bd. of Trustees of San Diego County Public*

2  *Law Library*, 179 Cal. App. 4th 58, 59-60 (2009) ("because the CFCA is patterned on a similar

3  federal statute, we may rely on cases interpreting the federal statute for guidance in interpreting the

4  CFCA."). In order to meet the protected activity prong of the CFCA retaliation cause of action, "the

5  employee must have reasonably based suspicions of a false claim and it must be reasonably possible

6  for the employee's conduct to lead to a false claims action." *See Kaye*, 179 Cal. App. 4th at 60.

7       Thus, it is necessary to analyze whether Plaintiff reasonably believed Defendants' conduct

8  violated the False Claims Act. According to Plaintiff, he "alleges that the DPW's false claims

9  consisted of requesting money to pay for employees who were unlawfully hired pursuant to City

10  Charter Rule 10.104(18), which hiring was unlawful *ab initio*." Pl.'s Opp'n, Docket No. 66, at 9:12-

11  14. "The essence of Plaintiff's claim is that the employment itself was unlawful, not merely that the

12  money paid to individuals pursuant to that employment was unlawful." *Id.* at 9:16-18. Plaintiff's

13  argument lacks merit for several reasons.

14       First, as argued by Defendants, Plaintiff has not identified any "claim" within the meaning of

15  the False Claims Act. A "claim" is a request for money, property, or services to the government or a

16  government contractor. Cal. Gov. Code § 12650. Plaintiff's disclaimer of a false claim based on

17  payment of money vitiates the assertion of a "claim" within the meaning of § 12650.

18       Second, even without Plaintiff's disclaimer, "claims" under § 12650 does not include money

19  paid as compensation for employment. *See* Cal. Gov. Code § 12650(b)(2) (as amended by Stats.

20  2009, ch. 277, § 1) ("'Claim' does not include requests or demands for money, property, or services

21  that the state or a political subdivision has paid to an individual as compensation for employment

22  with the state or political subdivision . . . ."). *But see County of Kern v. Sparks*, 149 Cal. App. 4th

23  11, 18 (2007) (recognizing false claim when sheriff compensated himself and seven commanders

24  with unauthorized premium pay) (prior to 2009 amendment of "claim" definition to exclude

25  compensation).

26       Third, if anything, there is an underpayment of salaries to temporary employees, such as

27  Plaintiff. Plaintiff cites no precedent for the proposition that underpayment of public employees can

28  be a "claim" within the meaning of the False Claims Act. "[T]he Legislature obviously designed the

1  [False Claims Act] to prevent fraud on the public treasury, and . . . the ultimate purpose of the [False

2  Claims Act] is to protect the public fisc." *Cal. v. Altus Finance, S.A.*, 36 Cal. 4th 1283, 1296-97

3  (2005) (internal alterations, quotation marks, and citations omitted).

4         Finally, Plaintiff's False Claims Act retaliation claim runs into an even more fundamental

5  problem:  even if Plaintiff reasonably believed that the alleged unlawful conduct constituted a

6  "claim" within the meaning of the CFCA, a claim must be made by a "person" within the meaning

7  of the CFCA, which *does not* include government entities.  *See* Cal. Gov. Code §§ 12650(b)(8),

8  12651(a); *Wells v. One2One Learning Found.*, 39 Cal. 4th 1164, 1192-93 (2006).  As explained by

9  the California Supreme Court in light of the CFCA's damages provision:

10            The Legislature is aware of the stringent revenue, budget, and
              appropriations limitations affecting all agencies of government . . . .
11            Given these conditions, we cannot lightly presume an intent to force
              such entities not only to make whole the fellow agencies they
12            defrauded, but also to pay huge additional amounts, often into the
              pockets of outside parties. Such a diversion of limited taxpayer funds
13            would interfere significantly with government agencies' fiscal ability
              to carry out their public missions.
14

15  *Wells*, 39 Cal. 4th at 1195-96.  For similar reasons, "a public official may not be a proper defendant

16  under CFCA for acts taken in his or her official capacity."  *Dockstader v. Hamby*, 162 Cal. App. 4th

17  480, 491 (2008).  Here, the alleged scheme of using temporary exempt employees was conducted by

18  Storrs and DPW.  *See* Compl., Docket No. 55, ¶¶ 28.  Under CFCA, neither the DPW nor Storrs

19  acting in his official capacity is a "person" within the meaning of CFCA.

20         As Plaintiff can neither demonstrate a "claim" nor a "person" within the meaning of the

21  CFCA, his third cause of action fails.  Plaintiff has not been able to articulate facts that would allow

22  him to proceed under this cause of action despite numerous opportunities to amend his complaint.

23  The *Carnegie-Mellon* factors, in particular judicial economy, weigh in favor of the Court continuing

24  to exercise jurisdiction for the purpose of dismissing this cause of action, as Plaintiff has not alleged

25  facts showing reasonable belief in any conduct that might constitute a valid false claim and thus

26  remand to state court would waste judicial resources to reach the same conclusion.

27         Accordingly, Plaintiff's third cause of action is dismissed with prejudice.

28

United States District Court

For the Northern District of California

I.        Labor Code Section 1102.5(b) Retaliation (Fifth Cause of Action)

Plaintiff's fifth cause of action is for unlawful retaliation in violation of California's whistleblower statute, Labor Code section 1102.5(b).  To establish his prima facie case for retaliation for complaining of unlawful activity, a plaintiff must show (1) he engaged in a protected activity, (2) he was subject to an adverse employment action, and (3) there is a causal link between the two.  *Mokler v. County of Orange*, 157 Cal. App. 4th 121, 138 (2007).  As for the first factor requiring protected activity, section 1102.5(b) protects employees who report reasonably based suspicion of conduct violating state or federal law.  *See Patten v. Grant Joint Union High School Dist.*, 134 Cal. App. 4th 1378, 1384-85 (2005).  However, California courts have declined to extend this protection to general complaints made about the work environment.  *See Mueller v. Cnty. of Los Angeles*, 176 Cal. App. 4th 809, 822 (2009).

Plaintiff argues that he was terminated for complaining of violation of California Government Code section 12653.  *See* Pl.'s Opp'n, Docket No. 66, at 7:24-26.  As discussed above, section 12653, part of the California False Claims Act, prohibits retaliation against employees who act in furtherance of a false claims action.  *See* Cal. Gov. Code § 12653.  Thus, Plaintiff's argument appears to be that he was retaliated against pursuant to section 1102.5(b) for reporting *unlawful* retaliation pursuant to section 12653 for acting in furtherance of a false claims action.  *See* Defs.' Reply, Docket No. 68, at 3:15-19.  However, Plaintiff's complaint does not allege facts asserting such a claim of retaliation for reporting retaliation.

To the extent Plaintiff is instead asserting that he reasonably believed there was a substantial False Claims Act violation, reported that violation, and was subsequently terminated (*see* Pl.'s Opp'n, Docket No. 66, at 7:6-26), the issue is whether Plaintiff reasonably suspected that Defendants' conduct violated the False Claims Act.

So framed, the analysis of the "protected activity" prong of Plaintiff's fifth cause of action converges with analysis of his third cause of action for False Claims Act retaliation.  As discussed above, Plaintiff has not demonstrated a violation of the False Claims Act with respect to his third cause of action; that claim is so devoid of merit, he has not established even a reasonable suspicion of such violation.  Rather than constituting a complaint of unlawful activity, Plaintiff's complaint is

20

more akin to the sort of internal personnel complaint courts have repeatedly held to not be entitled to whistleblower protection, as such protection would "thrust the judiciary into micromanaging employment practices and create a legion of undeserving protected 'whistleblowers' arising from the routine workings and communications of the job site." *Mueller*, 176 Cal. App. 4th at 822 (quoting *Patten v. Grant Joint Union High School Dist.*, 134 Cal. App. 4th 1378, 1385 (2005)).

Finally, Plaintiff cannot claim retaliation for protesting about a violation of the San Francisco Charter. Protected activity under § 1102.5 covers reporting of violations only of state or federal law; it does not cover reporting violations of municipal law. *Edgerly v. City of Oakland*, 2012 WL 6194390 (Cal. Ct. of App. Dec. 12, 2012).

Accordingly, his fifth cause of action under Labor Code section 1102.5(b) also fails. As with his third cause of action, the Court exercises jurisdiction over the fifth cause of action in the interest of judicial economy and **GRANTS** Defendants' motion to dismiss Plaintiff's fifth cause of action. It is dismissed with prejudice.

## IV.   CONCLUSION

In sum, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's second through seventh causes of action and dismisses these causes of action with prejudice. The Court find there is no taxpayer standing under Article III to assert the first cause of action and **REMANDS** Plaintiff's first cause of action under CCP § 526a for consideration in state court.

This order disposes of Docket No. 60.


IT IS SO ORDERED.


Dated:  December 19, 2012

_____
EDWARD M. CHEN
United States District Judge

21